## Lehigh County *against* Kleckner.

A county is not liable on a *quantum meruit* for the expenses incurred in the erection of a county bridge.

The commissioners in erecting a county bridge must build it according to the estimate which they are directed by law to procure, and that either by contract or under their own superintendence, and can on no pretence exceed the estimate.

If there be a change of the original plan, there must be a new estimate.

A county can only be sued in the courts of the county itself; the courts of other counties have no jurisdiction.

A public municipal corporation can only be sued in the courts of the county where it is situated.

THIS was a writ of error to the Court of Common Pleas of the county of *Northampton*, in which the plaintiff below obtained a verdict and judgment.

It was an action of *indebitatus assumpsit* in the Court of Common Pleas of Northampton county, brought by Daniel Kleckner against the county of Lehigh, for work and labour done in the erecting of a county bridge, in the county of Lehigh, for the commissioners of Lehigh county. It appeared that Kleckner had a written contract with the commissioners for building the bridge in a certain manner, and for a certain sum, which they had paid him, and also that there was extra work, for which they settled with him. But he now claimed more, alleging that the original plan was enlarged at the instance of the commissioners, and that some of them promised him he should be no loser; that he was put to an expense, in consequence of this change, considerably more than the money he had received would compensate him for. The defendant gave evidence to show that the whole matter had been adjusted between them when the plaintiff was paid, and also that some of the work was badly done. Exceptions to evidence were taken, but the only questions agitated in this court were, whether the county was liable on a *quantum meruit*, and whether the Court of Common Pleas of Northampton county had jurisdiction of the case. The court below charged that the suit was sustainable.

*Jones*, for plaintiff in error.

This action cannot be sustained. The Act of 21st March 1806 provides, that whenever a remedy is given by an Act of Assembly, it must be pursued strictly, and no action at common law can be sustained. The Act of 13th June 1836 points out the remedy for the plaintiff here. This is an action at common law. The plaintiff's declaration is in *indebitatus assumpsit*, which cannot be main-

v. — Q

tained on a contract made by commissioners for the erection of a bridge under the Act of Assembly. I grant, the rule of law is, that where the terms of a special contract to do a certain thing for a certain sum have been complied with by the plaintiff, the law raises a duty in the defendant for which *indebitatus assumpsit* will lie. *Kelly* v. *Foster*, (2 *Binn.* 4); *2d Smith's Lead. Ca., note to Cutter* v. *Powell.* But the Act of Assembly, in this case, interferes with the rule of pleading, because it deprives the plaintiff of the right to go before a jury, in the first instance, with proof of the execution of the contract on his part, and compels him first to apply to the Quarter Sessions of the proper county for viewers, who are to judge, in the first instance, not only whether the work has been fully executed, but whether it has been executed properly. This is not all. The court itself, acting through viewers, must approve of the bridge before the contractor has a right to receive the money which was agreed to be paid, and the commissioners not only are not bound to pay the money before approval, but they would not be justified in so doing; of course, such refusal to pay before approval, would be no breach of the contract, and no action could be maintained against them for that cause.

Again, the commissioners of a county have no power to make a general contract under the Act of 13th June 1836, to pay a *quantum meruit*, and consequently no contract can be implied. The commissioners act under checks. Where a bridge is authorized by the court, the first thing they are to do is to procure an estimate; sect. 36 : secondly, to provide for the payment and building of the bridge in the county rates and levies. If they do not think proper to build a bridge under their own superintendence, they must contract for a stipulated sum; this is evident from sects. 40 and 41, which speak of the money to be paid agreeably to the contract, and of the sum stipulated in the contract.

There is another reason of more general application. In case the bridge is disapproved of, the Act points out the course to be pursued. The viewers are to report what sum they think ought to be deducted from the sum stipulated in the contract. Then the court grants a rule in the Quarter Sessions of the respective county, upon the contractor, to show cause against the report of the viewers: this is a peculiar jurisdiction or power given to the Quarter Sessions, to proceed in this case in a way not known to the common law. The contractor is then allowed to take either of two courses; to file his declaration in the Common Pleas of the respective county, or to show cause against the rule. Sect. 42.

This proves two things, one of which is pertinent to the question, namely, he must declare upon the contract. The Act gives him no right to declare as he might at common law, in general *indebitatus assumpsit*, on the ground that he has fully executed the contract, but he must declare on the contract. Here the plaintiff has not declared on the contract. The contract was under seal;

[Lehigh County v. Kleckner.]

but if it were not, the declaration is bad, because it is not on any special contract, but a general *indebitatus assumpsit*. But if the contract were general, still it would not help the matter, for the commissioners have no power under the Act to make any but a special contract. The whole scope of the Act shows that the Legislature never intended that commissioners should have general powers to make contracts, such as a man may make in conducting his own affairs. In general, where there has been a special contract, and extra work has been done, *assumpsit* for work and labour lies for the excess; but here this cannot be done, because no such implied promise can be raised, because commissioners have no power to make a general contract to pay what the party would reasonably deserve to have. The proper course would be, in such case, to make a new special contract for such deviation or excess, and to stipulate a sum to be paid for it; see sect. 41; otherwise how could the 41st sect. of the Act of 13th June 1836 be carried into effect? How could the viewers say how much should be deducted on account of the extra work, if no stipulated sum is fixed for it? Is the party to estimate for himself, in the first instance? That would not do, for the Act says the sum stipulated in such contract.

All actions of this kind are local, and not transitory, apart from any considerations drawn from the Act of 13th June 1836. The county of Lehigh, and not the commissioners, is the party to this suit, and the defendants below. It is a municipal corporation, essentially local. The maxim, *debitum et contractus sunt nullius loci*, has its exception. Covenants sometimes run with the land, and liabilities arising out of privity of estate must be enforced in the county where the land or estate lies. If rent is made payable in a different county from that in which the lands lie, still the action of covenant for the rent is local. 1 *Selw. N. P.* 414. The action is local when all the principal facts on which it is founded are local. *Steph. on Pl.* 337. The averment in the declaration of a contract made at Lehigh, to wit, in the county of Northampton, is allowed in the case of natural persons, where the contract might possibly be made in either place: *actio personalis sequitur personam*. But, in this case, the averment is neither true nor possible. Nor is it an answer to say that the agents of the county made the contract at the county of Northampton; for an agent cannot bind his principal in any place where the principal cannot be supposed to be present. The law of principal and agent makes the liability of the former rest on the presumption that the one is present, whilst the other makes the contract.

But suppose judgment is obtained against the county of Lehigh, in the Common Pleas of Northampton county, how can its payment be enforced? Not by execution, but by *mandamus*, as directed by the Act of Assembly. See Act of 15th April 1834, *Purd. Dig.* 190. The Court of Common Pleas of Northampton

[Lehigh County v. Kleckner.]

county is limited in its jurisdiction. This court here would not exercise its extraordinary powers, to enforce it, as in *The Commonwealth* v. *The Mayor of Lancaster*, (5 *Watts* 152). To found an application in this court, for a *mandamus*, the settled rule of law is, that there ought, in all cases, to be a specific legal right, as well as the want of a specific legal remedy. *Commonwealth* v. *Rosseter*, (2 *Binn*. 362); 8 *East* 219. It is an insuperable obstacle to this application, that the law gives a remedy, or specific mode of relief. See Act of 15th April 1834. The remedy is then *mandamus* to the Common Pleas of Northampton county, for that is the respective county where the judgment was obtained. But mesne process cannot go beyond the limits of the county, nor final process, except upon *testatum* clause, which is supposed to be based on a previous writ. Nor can this judgment be removed to Lehigh county for the purposes of a *mandamus*. See Act of 16th April 1840. Such judgments can be enforced only as the general execution law of 16th June 1836 directs. See *Purdon's Dig.* 419. This law of 16th June 1836 expressly excepts cases of execution against townships and counties from its provisions, inasmuch as such cases are provided for in the Act of 15th April 1834. The plaintiff then has sued us in the wrong county, for as the matter now stands, he cannot enforce his judgment: otherwise, if he had brought suit, or proceeded in the county of Lehigh as the law directs.

*Ihrie* and *Tilghman*, contra.

The jurisdiction remains unless taken away expressly or by manifest implication. *Palmer* v. *The Commonwealth*, (6 *Serg. & Rawle* 245); 6 *East* 601. No Act of Assembly has been cited to show that the jurisdiction of the court, in a case like the present, has been taken away; nor will it be intended, if not shown to be so. Doubts formerly existed whether a county was a corporation. *Lyon* v. *Adams*, (4 *Serg. & Rawle* 448); but now, by the Act of 15th April 1834, they are made so; and they may make contracts, and be held responsible for them, whether express or implied. They may make a contract in another county, and there is no reason why they may not be sued upon it. Any corporation may be sued elsewhere than where it is situated, and no distinction can be made whether it is municipal or otherwise. As the Judges and jurors of the county itself are all interested, the attainment of justice is doubtful, if you are compelled to sue in that county; whereas the people of other counties have no interest. We say that if one of the officers of the corporation is found in another county, the jurisdiction attaches. If one goes abroad to another State, there is no reason why he should not be served with process, in a suit against the corporate body. And as to execution, property might be found in Northampton county belonging to Lehigh county, and executions might be levied upon it. Even

[Lehigh County v. Kleckner.]

if a *mandamus* be the only mode of arriving at execution, that is no objection to our obtaining judgment.

The opinion of the Court was delivered by

Rogers, J.—The only errors which we deem proper to notice, are, 1. Whether a county is liable on a *quantum meruit* for the expenses incurred in the erection of a county bridge; 2. Whether courts of another county have jurisdiction to try the cause. The 35th section of the Act of the 13th of June 1836, " An Act relative to roads, highways and bridges," provides for the manner of authorizing the building of a county bridge. And, by the 36th section, whenever a bridge shall be authorized and recorded as a county bridge, it is made the duty of the commissioners to procure an estimate of the cost, to provide in the county levies the money necessary to defray the same, and to proceed to have such bridge erected, by *contract or otherwise*, as shall seem to them expedient.

The first step, therefore, is to obtain proper authority to build the bridge; 2. To have an estimate made of the expense, to provide the ways and means for its payment; and lastly, the commissioners are directed to proceed to its erection in the manner directed in the Act. By the last clause, they are empowered to erect the bridge by contract; that is, by persons specially employed at a certain fixed price, or rate; or they may, if they like, build the same under their own immediate inspection and superintendence. The whole spirit and tenor of the Act looks only to these two modes of construction, and this for reasons, the wisdom of which this case illustrates in a striking manner. In no event, and under no pretext, as we conceive, are the commissioners at liberty to exceed the estimated expense of the works; for there is nothing to countenance the idea that the commissioners have authority either directly or indirectly to bind the county to pay the price or value which a jury may affix to it. If this were permitted, there would be little use of the directions in the first clauses of the section. Why have an estimate, or why provide for payment of the ascertained value, if the commissioners are at liberty to disregard it entirely? This view of the Act is strengthened by the subsequent sections, which provide for the inspection of the bridge by men appointed by the Court of Quarter Sessions for that purpose, who are also required to deduct from the sum stipulated in the contract, when the work is not approved by the viewers. And the same may be said of the 43d section, which provides for the inspection of the bridge when erected by and under the superintendence of the commissioners. It is remarkable that ample authority to decrease the price is given, but none to increase it, for the reason, already given, that it was on no account permitted to exceed the estimated value. What would become of these salutary checks which the law has wisely imposed on the commissioners and the undertakers, if the contractor were at liberty to go into

v. — 24　　　　Q*

[Lehigh County v. Kleckner.]

a court of common law, and have his damages assessed or his work valued by a jury? It requires no prophet to predict the consequences; for, as is very apparent, there would be no want of pretext to escape from an unprofitable contract. When the work is valued, as is required by the Act, it may be deemed too expensive, compared with its advantages; and a case may be well supposed—nay, has already occurred—where it would be the duty of the commissioners to suspend the erection of the bridge, notwithstanding the injunctions in the Act, which are not in all cases imperative upon them. Public works are usually undertaken by contractors on written proposals. And this induces competition, all the benefits of which would be lost to the county, if the doctrine contended for by the defendants in error should receive a judicial sanction. That such restrictions are salutary, is plain from the case itself. The original contract price was about $7000, but by the verdict of a liberal jury it is made to cost the county fifty per cent. in addition. The excuse is that there was an alteration in the plan, and also the contractor relies on proof of some loose declarations of one or more of the commissioners, that he should lose nothing by it. This evinces the danger of throwing open a contract between a rich municipal corporation and an individual. This was a mere pretext, for if there were a change of plan, which is very probable will very often be the case, and will be *very convenient,* what is there to prevent a new contract, or to have a proper estimate made of the increased expense? It must be remembered that the commissioners are public agents, with authority well defined, and the extent of it well known to the contractors. The public are not to suffer by the fraud or ignorance of either the commissioners or the contractors. Whatever equity the plaintiff may have, and I can conceive of none, he is not entitled to the aid of a court of common law, except so far as is specially directed in the Acts of Assembly. The object of the Acts is to protect counties, by imposing limitations on the power of the commissioners themselves, as well as the citizens with whom they contract.

Next, as to the jurisdiction. It is a strong argument against the decision of the Court of Common Pleas, that this is the first time, at common law, a right has been asserted to sue a public municipal corporation, except in the county where it is located. Although the action may be transitory, yet the forum where suit is brought *against* the corporation is local. At a very early period after the adoption of the constitution, it was ruled by the courts of the United States that a State was subject to suit by a citizen of another State; and yet it never entered into the mind of any person that the State of Maine, for example, was amenable to the courts of the United States in the State of Georgia. And this may serve to show the distinction between a suit brought *against* or *in favour of* a corporation. The latter must be brought against the person wherever he resides or may be found, whereas there is no

necessity to apply the principle to the latter, because a corporation is local in its character. It does not follow that because they may bring a suit in another county, the same rule may be applied to them when defendant. The reason is not the same, and therefore the law has always been understood to be otherwise. The argument derived from the Act which makes counties and townships bodies corporate, with power to sue and be sued, amounts to nothing; for it only, in these respects, places them on the same footing of other municipal corporations, which have never been liable to action except in the courts of the county where situated. But it is said that a county ought to be an exception, because the jurors and some of the Judges are or may be interested. But the interest of each individual, in a great majority of cases, is so trifling, that experience has taught us that this objection is more fanciful than real. So far is this from being a practical evil, requiring legislative interference, that it seems almost impossible, with all the safeguards provided by law, to protect counties particularly from individual ingenuity and rapacity. And of this the case in hand is an example; and I am sorry to add that cases of the same kind are not of unfrequent occurrence, as the financial condition of some of the counties affords melancholy proof.

But what may be considered conclusive of this point is, that there is no mode of serving process pointed out by the Act, nor can a party reap the fruit of his judgment by execution. The service of process against corporations, and against counties and townships, is regulated by the Act of the 13th of June 1836, § 41 and 42, and the Act of the 15th of April 1834; and in neither Act is authority given to serve process in any county except where they are located, unless as in the 42d section, where it is provided that in actions for damages, occasioned by a trespass or injury done by a corporation, where the officers of the corporation, or any of them, shall not reside in the county in which the trespass or injury shall be committed, process may be served *in any county or place where they may be found*. This provision would be totally unnecessary if the doctrine that a corporation is sueable in any county of the State be correct. It shows the legislative sense of the law in making provision for a case depending on peculiar circumstances. The manner of issuing executions against corporations is pointed out in the 72d and following sections of the Act of the 16th of June 1836, in which there is no indication of any authority for the courts of one county to issue an execution against a corporation located in a different county. And this indeed is true of all corporations whatever; much less would the court of Northampton have power to enforce a judgment rendered against another county — counties, townships, or other public corporate bodies, being expressly excepted from the operation of the Act. It would evince but little wisdom in the Legislature to give an action, without giving the courts power to cause process to be

[Lehigh County v. Kleckner.]

served to enforce their judgments by execution; and hence an argument of no inconsiderable weight, that it was not intended to make any alteration in the law as to the forum before which the action was to be brought. There is not the slightest necessity for such a change. It is true, that there may be cases in which prejudices may operate to the disadvantage of suitors; but this may happen where the contest is between citizens, and the only remedy in either case is by a change of venue. The case in 2 *Mass.* does not apply, as that depends on Acts of their own. It may be further proper to add, that when this case was here before, the points now ruled were carefully avoided by the court.

Judgment reversed.