# Malone et al., Appellants, v. Philadelphia.

[Marked to be reported.]

*Power of municipal officers to vary contracts—Extension of time.*

An officer of a municipality cannot bind his principal beyond the scope of his authority, nor within it except in strict conformity therewith; and not only the extent, but the manner of the execution of the authority, must have been such, and only such, as the authority conferred warranted.

Where a municipal contract permits the chief engineer of the city, upon written notice from the contractor, to make an extension of time in writing, a verbal extension for an indefinite period is insufficient to bond the city.

*Variations in municipal contracts—Act of June 1, 1885.*

As the act of June 1, 1885, requires that all municipal contracts shall be in writing, all variations of such contracts must also be in writing.

*Liquidated damages—Contracts.*

A stipulation in a contract for the payment by the contractors of $50 for each day that they should be in default will be considered on breach of the contract as liquidated damages, whenever the damages are uncertain and incapable of being ascertained by any satisfactory rule.

Argued Jan. 8, 1892. Appeal, No. 422, Jan. T., 1891, by plaintiffs, R. A. Malone & Sons, from judgment of C. P. No. 1 of Phila. Co., Dec. T., 1888, No. 346, on verdict for defendant. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit on a municipal contract.

The facts appear by the opinion of the Supreme Court.

ALLISON, P. J., charged in part as follows:

" This, . . . in my judgment, is to be regarded as an agreement for liquidated damages, fixed, set, liquidated damages, and not as a penalty, and simply to recover the actual damages sustained, and no more than the damages which have been shown to have existed.

"I do not know of anything else to go to the jury under this evidence, and there is nothing in the whole case as presented which would lead the jury in arriving at the conclusion that there was such an extension in terms, or at least such an extension of time as the contract calls for; and that upon the question of damages these are to be regarded as liquidated damages and not as a penalty, and, therefore, I say to you that you find a verdict for the defendant." [3]

The plaintiff presented the following points:

1. That as the chief engineer did not in his extension extend the time of completion to a certain date from which the damages for delay shall begin to run, the power of the chief engineer to make any deduction by force of the provision in this clause of the contract was lost, and as there is no other provision in the contract vesting any power to determine damages for delay the same must be proven before that can be made. A. Refused. [1]

2. If the jury believe that the plaintiff did the work under the assurance that the time clause of the contract would not be enforced, there was no authority in the chief engineer to make the deduction of $3,100 in the final estimate. A. Refused. [2]

*Errors assigned* were (1–3) instructions as above.

*David W. Sellers,* for appellants.—All evidence of waiver arising from the conduct of the parties was excluded from the consideration of the jury.

Though it be argued that the sum provided for in case of default shall be considered " not as a penalty, but as liquidated damages," yet it is a question for the court to determine from the character of the agreement: Shreve v. Brereton, 51 Pa. 175; March v. Allabough, 103 Pa. 336; Clements v. Railroad Co., 132 Pa. 445.

The law does not favor a forfeiture: Lauman v. Young, 31 Pa. 307.

*Abraham M. Beitler* and *Charles B. McMichael,* with them *Charles F. Warwick,* for the appellee.—There was nothing in the evidence to prove that the plaintiffs did the work under the contract upon the assurance that the time clause would be waived.

By reason of the delay the city lost interest, insurance, cost of maintenance, watchmen, etc. The right to retain the sum of $50 as "liquidated damages" would therefore seem clear: Addison on Contracts, 3999; Bouvier's Law Dict., tit. "Liquidated Damages;" Mathews v. Sharp, 99 Pa. 560; Marsh v. Allabough, 103 Pa. 341; Shreve v. Brereton, 51 Pa. 175: Coal Co. v. Schultz, 71 Pa. 180; Bigony v. Tyson, 75 Pa. 157; Gillis v. Hall, 7 Phila. 422; Streeper v. Williams, 48 Pa. 450;

Westerman v. Means, 12 Pa. 97; 2 Greenleaf on Evidence, § 258.

OPINION BY MR. JUSTICE HEYDRICK, February 22, 1892.

The contract upon which the plaintiffs declared was for the erection of a bridge over the Schuylkill river at Market street. It contained a covenant on the part of the plaintiffs that they would complete the bridge within twelve months from the date of notice to commence work; and that, if, for any reason except for the written consent of the chief engineer and surveyor, as therein provided, the completion of the work should be delayed beyond that period, they would pay the city, as liquidated damages, and not as a penalty, the sum of $50 for each and every day during which the work should be so delayed. The delegation of authority to give the " written consent " which should relieve the contractors from the payment of damages for delay was in the following words: " The chief engineer and surveyor, upon written notice from the parties of the second part (the plaintiffs) of the existence of causes over which they have no control, which must delay the completion of the work, may extend the period of its completion, and, in such case, the damages for delay shall begin to run from the period to which the date of completion shall have been extended." The contract was dated June 15, 1886; notice to commence work under it was given Sept. 7, 1886, and the bridge was not completed until Feb. 25, 1888, 171 days after the time limited for such completion. By another clause of the contract it was provided that, thirty days after completion of the work, the chief engineer and surveyor should " make a final estimate, including all legal and equitable deductions " from the contract price. That officer was of opinion that the neglect of the city to give the contractors notice to commence work in time to get the stone required for the masonry quarried and delivered before winter set in, furnished a valid reason for an extension of the time for completion until Dec. 15, 1887, but not for any longer period. He accordingly charged them for sixty-two days' delay after that date, at the rate of $50 per day, amounting to $3,100. That sum being withheld by the city, the contractors brought this suit for the recovery thereof.

Upon the trial the plaintiffs gave in evidence the contract, and one of them testified as follows : " I called on Mr. Smedley (the chief engineer and surveyor) about the time the notice to commence work was given, and told him I could not complete the work within twelve months, as though I had the work from June.    He said he knew that; that I need not regard that, as he would not hold me to it.    He did not fix a time at which the bridge should be completed.    He said if the work was completed as rapidly as we could do it, I need apprehend no difficulty as to an extension of time."    They also gave in evidence a letter, dated Jan. 22, 1887, addressed by them to the chief engineer and surveyor, in which, after referring to the difficulty of getting stone from the east in time to complete the bridge according to contract, they said : " We deem it our duty to notify you that it will be impossible for us to complete our contract on time, without great loss, which otherwise would not have occurred.    In view of these facts, we would suggest that a part of the stone be taken from granite quarries nearer home to enable us to fulfill the conditions of our contract with as little loss as possible."    Other evidence was given tending to show that the plaintiffs did their work under an assurance from the chief engineer and surveyor that the time clause in the contract would not be enforced.    Upon this evidence the court below directed a verdict for the defendant, and this direction is assigned for error on the ground that the evidence would have justified a finding that the time for the completion of the bridge had been indefinitely extended, and thereby the time clause of the contract waived; and upon the further ground, that the stipulation for the payment by the contractors of " the sum of $50 per day, for each and every day during which the work should be delayed " beyond the time limited for its completion, was in the nature of a penalty, and, as no damages had been proved, no deduction could be made from the contract price.

It may be conceded, that if the time for completion of the bridge was indefinitely extended, or if the time clause of the contract was waived, the power of the chief engineer and surveyor to make any deduction whatever, on account of delay, was gone.    But, assuming that all of the plaintiff's evidence was true, was the time extended, or the time clause waived? Assuredly one or the other was done, if it was in the power of

the chief engineer and surveyor to vary the terms of the con-tract by any oral promise or agreement. But that officer was a subordinate agent of the city. His powers, as such agent, were limited by the terms in which they were conferred. He could not bind his principal beyond the scope of his authority, nor within it except in strict conformity therewith. And not only the extent, but the manner of the execution of the author-ity must have been such, and only such, as the authority con-ferred warranted. These are elementary principles, and if authority for their application to cases like the present be need-ed, it may be found in Baring v. Peirce, 5 W. & S. 548; Head v. Ins. Co., 117 Cr. 127; Slifer v. Beates, 9 S. & R. 166; and Mackay v. Moore, Dud. 94.

Recurring to the clause of the contract under which alone the chief engineer and surveyor had authority to extend the time for the completion of the bridge, we shall see that nothing like a strict pursuance of that authority was shown. The power of the engineer could be called into exercise only by a written notice from the contractors of the existence of causes over which they had no control, which must delay the com-pletion of the work. The letter of Jan. 22, 1887, falls short of such notice.

But, if we were to treat it as sufficient to call into exercise the powers of the engineer, there is yet this insuperable diffi-culty in the way of the plaintiff's contention, that the exten-sion of time, which the engineer was authorized to grant, was required to be in writing, and for a definite period. It is not, indeed, said in terms that any extension of time that might be granted must be for a definite period, but that is clearly im-plied.

There is, moreover, back of the contract, a limitation upon the powers of the chief engineer and surveyor, which no con-struction that may be put upon the terms in which they were delegated can affect. By article XIV of the act of June 1, 1885, P. L. 37, it is provided, that "all contracts, relating to city affairs, shall be in writing, signed and executed in the name of the city . . . . No contract shall be entered into or ex-ecuted directly by the city councils, or their committees, but some officer shall be designated by ordinance to enter into and execute the same." This section is mandatory, and therefore

no contract can be made by the city otherwise than in writing. But it would be vain to put such prohibition upon the city government if, when executing a contract with all the required solemnities, it could delegate to a subordinate authority to waive or vary its terms by oral agreements or loose conversations. In case of such parol alteration, if effectual, the contract would not·" be in writing " as required by the statute.

The learned court below was clearly right in holding that the stipulation for the payment by the contractors of $50 for each day that they should be in default was intended to furnish a meas ure of damages. The measure suggested by the learned counsel for the plaintiffs would produce but a small fraction of the amount stipulated for in the contract, and, therefore, if correct, would indicate that the stipulation was, and must have been intended to be, penal. But it ignores the fact which alone could justify the municipal authorities in entering into the contract, and therefore must be assumed, namely, that the public convenience required the erection of the bridge, and that the loss resulting to the public from the want of it would amount to more than the cost of construction and maintenance. The interest on so much of the contract price, $271,000, as might be paid to the contractors by the time they should become in default, would amount to a considerable part of $50 per day, and would clearly be an element of damages, as the city would be paying that much interest without having the use of the bridge as an equivalent. But how much more than the interest upon the cost of construction the public inconvenience would amount to in dollars and cents it would be difficult, not to say impossible, to estimate. This difficulty brings the stipulation within the well settled rule that it will be inferred that parties intended a sum agreed to be paid upon breach of a contract as liquidated damages, whenever the damages are uncertain and not capable of being ascertained by any satisfactory rule.

The judgment is affirmed.