### Brobst, Appellant, *v.* City of Reading.

*Equity—Taxpayer's bill—Injunction—Municipal contract—Variance from specifications—Authority of city officials—Extra work.*

1. A contractor who enters into a contract with a city for the construction of a sewer pipe "in strict and exact accordance with" certain specifications and who deliberately substitutes a pipe differing materially from that required by the specifications, so that leakages result, is not entitled to compensation for the work required to prevent the leakage and it is immaterial that the engineer and board of public works of the city had assented to the use of this kind of pipe, since they are merely the agents of the city to act for it in the preliminaries leading up to the contract, to formulate the terms of the same and see that they were performed, but not to change such terms. The contractor is bound to take notice of the extent and limits of the powers of the agents of the city. Such work cannot be considered extra work.

2. In such a case a court of equity will upon a taxpayer's bill enjoin payment by the city for such work, and it is no defense to such a bill that the contractor acted in entire good faith.

Argued Feb. 26, 1912. Appeal, No. 281, Jan. T., 1910, by defendant, from decree of C. P. Berks Co., No. 961, Equity Docket, 1908, granting a perpetual injunction in case of Francis H. Brobst v. Caleb Weidner, clerk, Obadiah Doward, controller, and Edward H. Filbert, treasurer of the City of Reading, the City of Reading and John F. Albrecht. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and STEWART, JJ. Affirmed.

Bill in equity by taxpayer to enjoin payment by city to contractor.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was decree of court.

*Isaac Hiester,* with him *Adam B. Rieser,* for appellant.

*John B. Stevens,* for appellee.

OPINION BY MR. JUSTICE BROWN, July 2, 1912:

No one of the seventeen facts found by the learned court below has been assigned as error, and the case, as presented by them, is a very simple one, involving the single question to which there can be but one answer. In entering into the contract with the city of Reading for the construction of the sewer pressure pipe, the covenant of the appellant was that he would perform it "in strict and exact accordance with the terms, conditions and specifications" attached to it. The specifications called for a re-enforced concrete pipe, built monolithic, and the express stipulation was that, at the end of each days' work of construction, the concrete should be finished to a vertical joint, against which the next day's work should butt, the joint to be covered with a concrete ring or collar of designated width and thickness. The appellant, instead of intending to comply with that stipulation, entered into the contract with the deliberate intention of not doing so, but of substituting a pipe known as the Leet pipe, made up of short sections, manufactured outside of the trench. This pipe differed materially in the mode of re-enforcement from that required by the specifications, and was two-fifths thinner. The pipe was laid by the appellant in palpable disregard of the specifications and of his declaration in his proposal for the work, that he had examined the form of the contract as approved by the city solicitor and would contract, in the form so approved, to do all the work "in exact conformity with the terms, conditions and covenants contained in said agreement and the specifications."

As a consequence of the appellant's failure to construct the pipe as he had contracted, it leaked at most of its joints, and, when he stopped the leaks by widening the trench and building concrete rings around the joints, he did only what he ought originally to have done. In no sense can this last work be regarded as extra work, within the contemplation of the contract, and for which compensation ought to be allowed, for, if the appellant had laid a pipe in accordance with the specifications, and there had been leaks, he was bound, by the seventy-eighth clause of the specifications, to stop them by tearing up, if necessary, the entire pipe line and relaying it at his own expense. The answer made to this is that the city's board of public works had assented to the use of the Leet pipe. Suppose it had. Leaks in the pipe to be laid were to be stopped "at the expense of the contractor." But, even if this were not so, the plea of the appellant to be paid is unavailing for another reason. His contract was with the city of Reading, and not with its engineers or board of public works. They were but its agents to act for it in the preliminaries leading up to the contract, to formulate the terms of the same and to see that they were performed, and the appellant was bound to take notice of the extent and limits of the powers of these agents: Roland v. Reading School District, 161 Pa. 102; O'Malley v. Olyphant Borough, 198 Pa. 525. What the city engineer and the board of public works permitted the appellant to do was not the city's permission. He had contracted, as just stated, not with them, but with it, and they were without authority to make a new contract with him to bind it. The powers of the engineer were to interpret the contract, not to change it; and yet this is what he undertook to do. No deviations from the approved plans and specifications were to be allowed, unless by the written consent of the city engineer, approved by the board of public works. For, what was more than a mere deviation by the appellant

from his contract with the city, he did not even have the written consent of the engineer.

Nearly fifty years ago it was said by Mr. Justice Agnew, in Hague v. Philadelphia, 48 Pa. 527: "Now, more than ever, do we need a rigid enforcement of public contracts, and a stricter moral discipline, to defeat the varied plans by which money is taken from the treasury without authority. The older we grow as a people, the more systematized and difficult of detection do the schemes become for plundering the public; and among them all, none are more prominent or successful than those which concern contracts and jobs." If this was true then, it is truer now, and the learned chancellor below well said, that unless contractors are held to specifications and calls for bids upon them, they will, instead of serving to guide bidders and protect the public, become, as to both, a sham and a snare.

The appellant may have acted in entire good faith, but that is not the question before us. By his contract with the city, he and it are bound, and the appellee, a taxpayer, has the right to ask that both be held to their agreement, else moneys of the public will be unlawfully paid to the appellant.

The filing of this bill was not unduly delayed, and, as none of the assignments of error call for a reversal of the decree, it is affirmed at appellant's costs.