476 A.2d 904

**NETHER PROVIDENCE TOWNSHIP SCHOOL AUTHORITY, Appellant,**

v.

**THOMAS M. DURKIN & SONS, INC., a Pennsylvania corporation, and H. Gilroy Damon and H. Gilroy Damon Associates, Inc. and Haag & D'Entremont, Appellees.**

Supreme Court of Pennsylvania.

Argued April 11, 1984.

Decided May 31, 1984.

George W. Thompson, Upper Darby, for appellant.

Dale A. Betty, Media, for Durkin & Sons, Inc.

Peter A. Dunn, Media, for Damon, et al.

Bruce D. Lombardo, Philadelphia, for Hagg & D'Entremont.

Edward T. Rostick, Philadelphia, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This appeal by the Nether Providence Township School Authority (Authority) calls into question well-settled principles of law concerning waiver of public contract provisions regulating change orders and extra work claims.

The Authority and Thomas M. Durkin and Sons, Inc., (Contractor) entered into a contract on June 12, 1968, under which the Contractor was to construct a new high school for the Authority at a price of $586,000.00. Not long after construction began, the Contractor noticed discrepancies between the site plan topography contour lines and the actual topography conditions. Resolution of these discrepancies required the clearing of an additional three-fourths of an acre of ground at the job site. A dispute arose as to who would bear the cost of clearing and grading this land.

The Authority's President authorized its secretary to correspond with the Contractor, acknowledging the disagreement and recommending continuation of the work with resolution of any problem at a later time. The Contractor completed the job and billed the authority $22,200.18 for the extra work, claiming he had been induced to perform this work by the letter of April 29, 1969. Work orders submitted to the Authority were rejected except for a tree removal claim of $350.00; the other claims were held to constitute part of the original contract.

The Contractor thereupon instituted an assumpsit action against the Authority for the extra work in the Delaware County Court of Common Pleas, claiming that the April 29, 1969, letter was a waiver of the no change provisions of the contract. The Authority joined the engineers who prepared the sketches. They in turn joined the architects, but both were dismissed from the action during the course of the trial and non-suits were entered in their favor. A jury

returned a verdict against the Authority for $32,856.10 (the full claim plus interest) and post trial motions were denied by the trial court in its September 28, 1979, order. That order was affirmed by the Superior Court which held that the April 29, 1969, letter was a waiver of the contract provisions regulating extra work, *Durkin v. Nether Providence Township School Authority*, 314 Pa.Superior Ct. 131, 460 A.2d 800 (1983).

■ Because we perceived this conclusion to be a departure from firmly established case law, we granted allocatur. The contract before us imposes responsibility on the Contractor's part to determine the amount of cut and fill needed to complete the job[1], to examine the work site personally, and to satisfy himself as to the nature and location of the work, the confirmation of the ground, and the character, quality, and quantity of the materials which would be required for the job[2]. The contractor was aware of these

1. *SPECIAL CONDITIONS*
 "2C. *Rough Grading*
 E. *Cut and fill*
 1. Contractor shall make all necessary excavations and fills on the premises necessary to bring the finished floors and grades to the levels shown on the plans; or if not shown, then to grade as directed by the architect.
 3. It is estimated that the cut and fill on the combined east and west tracts is approximately equal; however, the site contractor will be held responsible for determining the true amount of cut and fill and for supplying all earth fill that may be required to accommodate the grades noted. Fill material shall be inorganic soil, free from rocks, frozen lumps, debris, vegetation or other foreign matter. It is expected that cut material from the east tract will be trucked to the west tract for use as fill. Trucking operation shall be in accordance with all requirements of the Township and Pennsylvania Department of Highways. Existing school paving shall not be used for this operation."

2. "A. It is the responsibility of, and it is hereby agreed that the contractor has, prior to signing of this contract, by following, or such other methods as he may desire to take, namely, by careful personal study of the contract, the plans, specifications, and all other documents and data pertaining to the project and by an examination of the site of the work, satisfied himself as to the nature and location of the work, the conformation of the ground, the character, quality, and quantity of the materials which will be required, the character of equipment and facilities needed preliminary to and during the prose-

duties and had every opportunity to make his own estimate of the necessary excavation and submit a bid including the additional excavations costs, or bring the discrepancy to the Authority's attention. Once his bid was accepted and the contract was executed, however, he became bound by it, irrespective of discrepancies in the site plan with the actual job conditions. The contractor's obligation thus was to complete the excavation as part of the original contract at the agreed upon price unless a change order for extras was submitted and approved as provided in the contract. Section 16A of the contract specifically regulates change orders as follows: "No change in the contract shall be made without the written approval of the Board. A request for any change must be in writing." "Approval" is defined in Section 2 as the "written approval of the Authority and the architect or their authorized representative."

 Where a public contract states the procedure in regard to work change and extras, claims for extras will not be allowed unless these provisions have been strictly followed. *Scott Township School District Authority v. Branna C. Corporation*, 409 Pa. 136, 185 A.2d 320 (1962); *Morgan v. Johnstown*, 306 Pa. 456, 160 A. 696 (1931). Here it is argued that the preparation of the change orders was supervised by the architect, contractor, and two members of the Authority Board, and that these members had authority to bind the Board on the change orders. We disagree. There is no evidence that the members were in fact authorized by the Board to prepare these change orders or bind the full Board with their representations. The contract requires written approval of the *Board* or its authorized

cution of the work, the general and local conditions, and of all other matters which can in any way affect the work under this contract.

No oral Agreement or conversation with any officer, agent or employee of the owner, school district, architect, or consultant, either before or after the execution of this contract, shall affect or modify any of the terms or obligations herein contained. Failure to comply with any or all of the above requirements will not relieve the contractor from the responsibility of properly estimating the difficulty or costs of successful completion of the work nor from the responsibility for the faithful performance of the provisions of this contract."

agent, and nothing short of this can satisfy the contract provisions. These orders were no more than requests which the Board was free to accept or reject. Accordingly, we find that the Contractor's change orders were not submitted strictly in accordance with the contract provisions; thus, the claims cannot be allowed.

■ Superior Court found that public bodies can waive the written authorization requirement if the waiver was in writing, and that the April 29, 1969, letter was such a written waiver. We disagree. Waiver of public contract provisions regulating change orders can be accomplished only by a formal written action, (i.e. a new contract) by the public body authorized to enter into the contract, or the express ratification of the extra work claim by resolution of the public body. *Morgan; Brobst v. Reading*, 236 Pa. 629, 85 A. 65 (1912); *Silsby Manufacturing Company v. Allentown*, 153 Pa. 319, 26 A. 646 (1893); *Malone v. Philadelphia*, 147 Pa. 416, 23 A. 628 (1892); *City v. Hays*, 93 Pa. 72 (1881); *McKnight v. Pittsburgh*, 91 Pa. 273 (1879); *Hague v. Philadelphia*, 48 Pa. 527, 529 (1865); *Lehigh County v. Kleckner*, 5 Watts & Serg. 181, 186 (1843).

■ The correspondence relied upon satisfies neither condition, and, therefore, cannot be the basis of a waiver of the contract provision. The letter is not the act of the full Board, only its president and secretary, and only ambiguously refers to the disagreement existing between the parties. This is not enough to satisfy the formal written action requirement. Additionally, since there was no subsequent express ratification of the Contractor's actions by resolution, we find no waiver of the contract provision by the Authority.

■ We have always rigidly imposed strict standards on contractors who deal with public bodies to prevent the unwarranted plundering of public funds, to uphold the integrity of the bidding process, and we see no reason to change our long established precedents today. We reiterate that public agreements can be altered only by the same

formal municipal action that created them or express ratification by resolution of the public body.

Since there is no evidence in this record to show formal waiver by the Authority, the Contractor cannot succeed with his claim, and the Authority's motion for judgment n.o.v. should have been granted.

The judgment of Superior Court is reversed, and the matter remanded to the trial court with directions to enter judgment for the Appellant Authority.

LARSEN, J., filed a Dissenting Opinion.

LARSEN, Justice dissenting.

I dissent. The majority holds that "[w]aiver of public contract provisions regulating change orders can be accomplished only by a formal written action, (i.e. a new contract) by the public body authorized to enter into the contract . . .," and that the April 29, 1969, letter was not sufficient to constitute such "formal written action." At 48. What the majority fails to consider, however, is that after appellee Durkin notified appellant Authority of the discrepancies between the actual site conditions and the topographical contour lines of the plans, the Authority ordered an investigation which resulted in a determination that the original plans were, in fact, in error. The Authority therefore *authorized the preparation of revised plans.*

The Authority admits that the changes made in the site plans resulted in "extra" work for Durkin but claims that since no formal change orders were approved by them, they are not liable for the extra cost to Durkin. I believe that no change orders were required since the Authority itself changed the contract by revising the plans. In *Scott Township School District Authority v. Branna Construction Corporation,* 409 Pa. 136, 138, 185 A.2d 320 (1962) (emphasis added), this Court refused to allow a claim for extra work performed under the contract based only upon *oral* change orders, since "[n]o formal work orders were executed either by the architect or by appellee and *no changes*

*were made in the plans or specifications."* By changing the site plans in this case, the Authority was taking "formal written action" and waiving the contract provision regulating change orders. The absence of a formal change order, therefore, should not affect Durkin's claim and I believe the majority does an injustice to hold otherwise.