# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Global Heavy Corp.,                          :
                       Appellant :
                                 :
            v.                      :
                                 : No. 1165 C.D. 2024
University Area Joint Authority   : Argued: May 6, 2025


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED: June 2, 2025


Global Heavy Corp. (Appellant) appeals from the Centre County Common Pleas Court's (trial court) August 27, 2024 order entering judgment in favor of the University Area Joint Authority (Authority)[1] and against Appellant. Essentially, Appellant presents one issue for this Court's review: whether the trial court erred by entering a compulsory nonsuit.[2] After review, this Court affirms.

---

[1] The Authority is a wastewater authority.

[2] In its Statement of the Questions Involved, Appellant presents five issues for this Court's review: whether the trial court erred by entering a compulsory nonsuit: (1) by finding that Appellant did not meet its burden of proving a breach of contract; (2) by finding that Appellant's failure to appeal from the engineer's change order denials to the Authority waived the appeal procedures in Article 12 of the Standard General Conditions of the Construction Contract; (3) where the Authority did not establish the enforceability of the contract's liquidated damages provision; (4) where there was no evidence presented concerning the amount of liquidated damages that the Authority was permitted to assess against Appellant; and (5) when it refused to permit Appellant to introduce expert testimony to quantify the amount of its delay damages. *See* Appellant Br. at 2-4. Because this Court's statement of the issue is dispositive, this Court will address it accordingly.

Appellant and the Authority entered into a contract (Contract) for the construction of a Biological Odor Control System (System) in September 2018.[3] *See* Reproduced Record (R.R.) Vol. III at 1110a-1116a. The Contract stated that Appellant shall substantially complete the System on or before July 21, 2019, *see* R.R. Vol. III at 1110a ("The [w]ork will be substantially completed within 320 days after the date when the Contract [t]imes commence to run."), and fully complete the System 45 days thereafter, *see id.* (The work will be "completed and ready for final payment . . . within 365 days after the date when the Contract [t]imes commence to run."). The Contract further provided that if Appellant did not substantially complete the System by that date, the Authority would be entitled to liquidated damages in a preset amount. *See* R.R. Vol. III at 1111a ("Contractor shall pay Owner $1,300.00 for each day that expires after the time . . . for [s]ubstantial [c]ompletion until the [w]ork is substantially complete[,]" and "Contractor shall pay Owner $135.00 for each day that expires after such time until the [w]ork is completed[.]"). The Standard General Conditions of the Construction Contract (General Conditions) contain the procedure for changing the Contract times or price.[4] *See* R.R. Vol. III at 1198a-1199a.

Appellant failed to substantially complete the System by July 21, 2019, and did not fully avail itself of the General Conditions' procedures to change the substantial completion date. Appellant initiated a start-up of the System in February 2020. Appellant did not substantially complete the final start-up until June 24, 2020. When Appellant substantially completed the System and sought payment of the Contract balance of $468,413.46, the Authority did not pay Appellant because Appellant did not substantially complete the System by July 21, 2019, and, thus,

---

[3] Appellant presented the Contract at trial, and the trial court accepted it into evidence. *See* Reproduced Record Vol. II at 576a (Ex. P-12).

[4] Appellant presented the General Conditions at trial, and the trial court accepted it into evidence. *See* R.R. Vol. II at 717a (Ex. D-99).

owed the Authority liquidated damages.  Appellant never fully completed the System.

On September 9, 2020, Appellant filed a Complaint against the Authority and Herbert, Rowland & Grubic, Inc. (HRG) for breach of contract.[5]  The trial court held a jury trial that began on January 22, 2024.  The trial was not held on January 23, 2024, due to an ice storm, and the trial resumed on January 24, 2024.  At the conclusion of Appellant's case-in-chief, the Authority moved for a compulsory nonsuit (Motion for Nonsuit), which the trial court granted.  On February 1, 2024, Appellant filed post-trial motions, which the trial court denied on August 20, 2024.  The trial court entered judgment in favor of the Authority and against Appellant on August 27, 2024.  Appellant appealed to this Court.[6]

On September 18, 2024, the trial court directed Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement).  On October 4, 2024, Appellant filed its Rule 1925(b) Statement.  On October 15, 2024, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).

---

[5] HRG is the Authority's consulting engineer firm.  On August 3, 2022, the trial court entered an order granting the parties' stipulation to dismiss HRG from the case with prejudice.

[6]  In reviewing the entry of a nonsuit, [an appellate court's] standard of review is well[ ]established: we reverse only if, after giving appellant the benefit of all reasonable inferences of fact, we find that the fact[-]finder could not reasonably conclude that the essential elements of the cause of action were established.  Indeed, when a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement.  The fact-finder, however, cannot be permitted to reach a decision on the basis of speculation or conjecture.

*Munoz v. Children's Hosp. of Phila.*, 265 A.3d 801, 805-06 (Pa. Super. 2021) (quoting *Rolon v. Davies*, 232 A.3d 773, 776-77 (Pa. Super. 2020)).

This Court has explained:

> Entry of a non[]suit is proper only if the fact-finder, viewing all the evidence in favor of the burdened party, could not reasonably conclude the essential elements of the cause of action were established. A compulsory non[]suit can only be granted in cases where it is clear a cause of action was not established. The trial court must give the non-moving party the benefit of all favorable evidence along with all reasonable factual inferences arising from that evidence, resolving any conflict in the evidence in favor of the non[]moving party. A compulsory non[]suit is valid only in a clear case where the facts and circumstances lead to only one conclusion - the absence of liability.

*Daddona v. Thind*, 891 A.2d 786, 816 (Pa. Cmwlth. 2006) (citations omitted).

Appellant argues that the trial court erred by entering a compulsory nonsuit based on the finding that Appellant did not meet its burden of proving a breach of contract. Specifically, Appellant contends that the primary basis for the Authority's Motion for Nonsuit was that Appellant failed to follow the Contract's General Conditions; however, whether Appellant failed to follow the General Conditions is absolutely not relevant to whether Appellant met its burden of proving its breach of contract claim. Appellant asserts that it had a contract, it completed its contractual obligations, and the Authority did not pay Appellant its entire Contract balance.

The Authority rejoins that the Contract did not simply state - construct the System and the Authority will pay you; the Contract stated - construct the System and achieve substantial completion within 320 days - and if you fail to achieve substantial completion within 320 days, then the Authority shall deduct $1,300.00 per day from the Contract price. The Authority further retorts that Appellant admits that it failed to achieve substantial completion within 320 days, and, thus, the Authority deducted $1,300.00 per day from the sums due, which the Contract

4

directly supported.  The Authority maintains that it did not breach the Contract by withholding liquidated damages.

Initially, Article 4 of the Contract provided:

4.01 Time of the Essence

A. **All time limits** for [m]ilestones, if any, [s]ubstantial [c]ompletion, and completion and readiness for final payment as stated in the Contract [d]ocuments **are of the essence of the Contract**.

4.02 Contract Times: Days

A. **The [w]ork will be substantially completed within 320 days after the date when the Contract [t]imes commence to run** as provided in Paragraph 4.01 of the General Conditions, **and completed and ready for final payment in accordance with Paragraph 15.06 of the General Conditions within 365 days after the date when the Contract [t]imes commence to run**.

4.03 Liquidated Damages

A. [Appellant] and [the Authority] recognize that time is of the essence as stated in Paragraph 4.01 above and that [the Authority] will suffer financial and other losses if the [w]ork is not completed and [m]ilestones not achieved within the times specified in Paragraph 4.02 above, plus any extensions thereof allowed in accordance with the Contract.  The parties also recognize the delays, expense, and difficulties involved in proving in a legal or arbitration proceeding the actual loss suffered by [the Authority] if the [w]ork is not completed on time.  Accordingly, **instead of requiring any such proof**, [**the Authority**] **and** [**Appellant**] **agree that as liquidated damages for delay** (but not as a penalty):

1. Substantial Completion: [**Appellant**] **shall pay** [**the Authority**] **$1,300.00 for each day that expires after the time** (as duly adjusted pursuant to the Contract) specified in Paragraph 4.02.A above **for [s]ubstantial [c]ompletion until the [w]ork is substantially complete**.

2. Completion of Remaining Work: **After [s]ubstantial [c]ompletion, if [Appellant] shall neglect, refuse, or fail to complete the remaining [w]ork within the Contract [t]imes** (as duly adjusted pursuant to the Contract) for completion and readiness for final payment, [**Appellant**] **shall pay [the Authority] $135.00 for each day that expires after such time until the [w]ork is completed** and ready for final payment.

3. Liquidated damages for failing to timely attain [s]ubstantial [c]ompletion and final completion are not additive and will not be imposed concurrently.

R.R. Vol. III at 1110a-1111a (emphasis added).

Section 11.05(A) of the General Conditions specified:

Change of Contract Times

A. The Contract [t]imes may only be changed by a [c]hange [o]rder. **Any [c]hange [p]roposal for an adjustment in the Contract [t]imes shall comply with the provisions of [Section] 11.06 [of the General Conditions]. Any [c]laim for an adjustment in the Contract [t]imes shall comply with the provisions of Article 12 [of the General Conditions].**[7]

R.R. Vol. III at 1198a (emphasis added). Section 11.06 of the General Conditions stated, in relevant part:

Change Proposals

A. [**Appellant**] **shall submit a [c]hange [p]roposal to [e]ngineer to request an adjustment in the Contract [t]imes or Contract [p]rice**[.] . . . The [c]hange [p]roposal shall specify any proposed change in Contract [t]imes or Contract [p]rice, or both, or other proposed relief, and explain the reason for the proposed change,

---

[7] Article 12 of the General Conditions sets forth the procedure for appealing the engineer's decision concerning adjusting the Contract price and Contract times. Appellant did not follow the Article 12 provisions in submitting and appealing change orders or seeking adjustments to the Contract price or deadlines pursuant to the terms of the Contract.

6

with citations to any governing or applicable provisions of the Contract [d]ocuments.

1. Procedures: [Appellant] shall submit each [c]hange [p]roposal to [e]ngineer promptly (but in no event later than 30 days) after the start of the event giving rise thereto, or after such initial decision.  [Appellant] shall submit supporting data, including the proposed change in Contract [p]rice or Contract [t]ime (if any), to the [e]ngineer and [the Authority] within 15 days after the submittal of the [c]hange [p]roposal.  The supporting data shall be accompanied by a written statement that the supporting data are accurate and complete, and that any requested time or price adjustment is the entire adjustment to which [Appellant] believes it is entitled as a result of said event.  Engineer will advise [the Authority] regarding the [c]hange [p]roposal, and consider any comments or response from [the Authority] regarding the [c]hange [p]roposal.

2. Engineer's Action: Engineer will review each [c]hange [p]roposal and, within 30 days after receipt of [Appellant's] supporting data, either deny the [c]hange [p]roposal in whole, approve it in whole, or deny it in part and approve it in part.  Such actions shall be in writing, with a copy provided to [the Authority] and [Appellant]. . . .

3. Binding Decision: **Engineer's decision will be final and binding upon [the Authority] and [Appellant], unless [the Authority] or [Appellant] appeals the decision by filing a [c]laim under Article 12 [of the General Conditions]**.

R.R. Vol. III at 1198a-1199a (emphasis added).

Finally, Section 15.03(A) of the General Conditions instructed:

When [Appellant] considers the entire [w]ork ready for its intended use [Appellant] shall notify [the Authority] and [e]ngineer in writing that the entire [w]ork is substantially complete and request that [e]ngineer issue a certificate of [s]ubstantial [c]ompletion.  [Appellant] shall at the same time submit to [the Authority] and [e]ngineer an initial draft of punch list items to be completed or corrected before final payment.

7

R.R. Vol. III at 1211a.

At trial, Appellant presented Gregory Maynard (Maynard), Appellant's estimator,[8] who testified:

> Q. So you understood that [Appellant] had 320 days to get this project substantially completed?
>
> A. Yes, I did.
>
> Q. Did you believe that time period was reasonable and achievable?
>
> A. I thought it was reasonable based upon experience, yes.
>
> . . . .
>
> Q. This one is a little longer, but I'll ask the next page, subparagraph 1, it says, the [Appellant] shall pay [the Authority] $1,300[.00] for each day that expires after the time for substantial completion. Did you understand that there was a liquidated damage provision of $1,300[.00] a day?
>
> A. Yes, I did.

R.R. Vol. II at 573a. Maynard further related:

> Q. . . . . July of 2019 was your substantial completion deadline, right?
>
> A. Correct.
>
> Q. Was the [System] substantially completed at that point in time?
>
> A. No.
>
> . . . .
>
> Q. . . . . Do you see that document?
>
> A. Yes, I do.

---

[8] An estimator is the person who calculates a bid price to submit when vying for a public job.

8

> Q. It's a December 11, 2019 letter from HRG to [Appellant]; do you see that?
>
> A. Yep.
>
> . . . .
>
> Q. Okay, and this letter is advising [Appellant] that the [System] has run past the completion deadline; do you see that?
>
> A. Yes.
>
> Q. And it says that the [Authority] may at some point impose a setoff for liquidated damages; do you see that?
>
> A. Yes, I do.

R.R. Vol. II at 606a.

Maynard also testified on direct examination that Appellant substantially completed the work by February 29, 2020. *See* R.R. Vol. II at 612a-613a. However, on cross-examination, Maynard admitted:

> Q. [Exhibit] D[-]48[9] is a letter that notifies the [Authority], from [Appellant], that [**Appellant**] **thinks the** [**System**] **is substantially complete**; is that correct?
>
> A. That's correct.
>
> Q. Okay, and that letter is dated **June 26**[ ], **2020**; is that correct?
>
> A. That's correct.
>
> Q. There's no other letter from [Appellant] notifying, well, even [Benjamin] Burns[, HRG's engineer (Burns),] of substantial completion prior to this date; is that correct?

---

[9] The trial court accepted Exhibit D-48 into the record. *See* R.R. Vol. II at 628a; *see also* Notes of Testimony, January 22, 2024 (N.T.) at 288 (Ex. D-48) ("This letter serves as [Appellant's] notification that [it] consider[s] the work for the [System] ready for its intended use. As such, we respectfully request [s]ubstantial [c]ompletion. Attached please find the initial draft punch list."). Exhibit D-48 is not included in the Reproduced Record. Because the trial transcript pages are not numbered, this Court references electronic pagination.

A. There's no other letter --

Q. Thank you.

A. -- that I am aware of.

Q. Okay, thank you. Ergo or so, **this is the notice to the [Authority] that [Appellant] thinks the [System] is substantially complete**, and that occurred **on June 26th of 2020**; is that correct?

A. **That's correct**.

R.R. Vol. II at 626a-627a (emphasis added).

Maynard again confirmed:

Q. Right. We talked about liquidated damages. You understood from the beginning that the liquidated damages were in the contract; is that correct?

A. That's correct.

Q. You knew that you could be held responsible for liquidated damages if [Appellant] went past the 320 days; is that correct?

A. Without a time extension, yes.

Q. Fair enough. You signed the contract knowing that; is that correct?

A. [Appellant] did, yes.

Q. And you knew that in essence [Appellant] was assuming that risk that, you know, if we go beyond 320 days, we could potentially have to pay liquidated damages; is that –

A. That is correct.

R.R. Vol. II at 629a-630a.

Finally, Maynard expounded:

Q. And at some point in time -- well, it says on the next page, [Section] 11.06(a)(3) [of the General Conditions], it

10

says binding decision. Engineer's decision will be final and binding upon [the Authority] and [Appellant] unless [the Authority] or [Appellant] appeals the decision by filing a claim under [A]rticle 12 [of the General Conditions]; is that correct?

A. Correct.

Q. You understand that means that if you don't file the appeal[,] the decision on the change order is final?

A. We did not need an appeal.

Q. **Did you file an appeal to the** [**Authority**]?

A. **No**. [] Burns told us he would wait until the end of the job and discuss it.

Q. [] Burns told you; he's an HRG employee, right?

A. That is correct.

Q. You've sued the [Authority]. We've established that.

A. He's [sic] representative of the [Authority].

Q. And you're saying he said you could wait until the end, right?

A. That is correct.

Q. Well, let me be clear; I'm talking about **at any point in time**, **beginning**, **middle**[,] **or end**. **You never submitted a claim**, **correct**?

A. **Not an appeal**.

R.R. Vol. II at 649a-651a (emphasis added).

Appellant also presented Burns at trial, who described:

Q. . . . . Let's talk about time extensions on this project. Okay? [Appellant] was given a couple of change orders at the end of the project. I think they were almost $20,000[.00]. Do you recall those?

A. I do. I don't think they were at the end though, they were throughout the project.

11

. . . .

Q. So 41, Exhibit 41.

. . . .

A. I see that.

Q. Was that at the end of the project?

A. Yes, you are correct. It was the end.

Q. This is a long time ago, so I understand. So you approved that in July; correct?

A. We approved it in part, yes.

Q. You gave them the money, right?

A. Correct.

Q. But you didn't give them the days they requested; correct?

A. Correct.

R.R. Vol. II at 917a-918a.

It is well-established law that "[w]here a public contract states the procedure in regard to work change and extras, claims for extras will not be allowed unless these provisions have been strictly followed." *Nether Providence Twp. Sch. Auth. v. Thomas M. Durkin & Sons, Inc.*, 476 A.2d 904, 906-07 (Pa. 1984). Further, "[w]aiver of public contract provisions regulating change orders can be accomplished only by a formal written action, (i.e.[,] a new contract) by the public body authorized to enter into the contract, or the express ratification of the extra work claim by resolution of the public body." *Id.* at 907. The *Nether Providence* Court expounded: "[The Pennsylvania Supreme Court] ha[s] always rigidly imposed strict standards on contractors who deal with public bodies to prevent the unwarranted plundering of public funds, to uphold the integrity of the bidding

12

process, and [our Supreme Court] see[s] no reason to change our long[-]established precedents . . . ." *Id.*

Here, Appellant agreed to substantially complete the System within 320 days. Pursuant to the Contract, if Appellant did not substantially complete the System within 320 days, the Authority "shall charge" Appellant liquidated damages in a preset amount. R.R. Vol. III at 1111a. According to the General Conditions, to change the time, Appellant had to request a change order from the engineer. If the engineer denied the request, Appellant had to appeal the denial to the Authority.

The evidence presented established that although Appellant submitted change orders to the engineer to change the time, the engineer denied them. The evidence presented further established that Appellant at no time appealed from those denials to the Authority. "Since there is no evidence in this record to show formal waiver by the Authority, [Appellant] cannot succeed with [its] claim[.]" *Nether Providence*, 476 A.2d at 907. Accordingly, Appellant did not present evidence upon which a jury could conclude that the Authority breached the Contract by withholding the agreed upon liquidated damages from the Contract price.

The trial court opined on the record:

> All right. So a compulsory nonsuit at trial in [Pennsylvania], in an action involving one plaintiff and one defendant, upon an oral motion, the [d]efendant may [request] a nonsuit on any and all the causes of action at the close of [the p]laintiff's [case] . . . if the [p]laintiff has failed to establish the right to relief. The [trial c]ourt decided the motion shall be considered only [sic] evidence which was introduced by the [p]laintiff and any evidence favorable to the [p]laintiff introduced by the [d]efendant prior to the close of the [p]laintiff's case.
>
> Obviously[,] we've reached the close of [Appellant's] case. [Counsel], on behalf of the [Authority], has made this motion. The [trial c]ourt does not take this motion lightly because if there are factual disputes, it should be in the purview of the jury to come to a decision on this.

13

> However, in this matter, the [trial c]ourt has allowed [Appellant] to get past summary judgment to present this case. And having had the evidence that will be on record finds that [Appellant] has failed to establish a right to leave on any of their causes. As a result, the compulsory nonsuit will be granted and [the trial court will] enter a nonsuit in all causes of action in [Appellant's] complaint.

R.R. Vol. II at 959a-960a. After a thorough review of the record, this Court discerns no error in the trial court's reasoning.[10]

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

---

[10] Based on this Court's conclusion, Appellant's additional issues presented are moot. However, this Court notes, Appellant did not present any evidence to establish that the Authority withheld more than the liquidated damages costs from the Contract price, only that the substantial completion date was disputed. Notwithstanding, Maynard admitted that Appellant notified the Authority on June 26, 2020, in accordance with Section 15.03(A) of the General Conditions, that the System was substantially completed. *See* R.R. Vol. II at 627a; *see also* N.T. at 288.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Global Heavy Corp.,              :
             Appellant     :
                               :
          v.                :
                               :  No. 1165 C.D. 2024
University Area Joint Authority   :

## O R D E R

AND NOW, this 2nd day of June, 2025, the Centre County Common Pleas Court's August 27, 2024 order is affirmed.

_____
ANNE E. COVEY, Judge