## Morgan *v.* Johnstown, Appellant.

Argued March 23, 1931. Reargued March 14, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ., on reargument.

*Tillman K. Saylor,* City Solicitor, with him *Friedjoff Tappert,* for appellant.—Plaintiff's testimony shows

that the contract was invalid and illegal as it was made without previous authority of law or ordinance and as there was no prior appropriation by ordinance of money for the purpose of the contract: Willis v. Poor Directors, 284 Pa. 138; Harris v. Phila., 283 Pa. 496; Lamb v. Erie, 262 Pa. 391.

In a municipal contract plaintiff contractor cannot recover for alleged extra work where the work is covered by unit prices in the contract: Ruch v. York, 233 Pa. 36; Coryell v. Boro., 226 Pa. 103; Reilly v. Wilkes-Barre, 258 Pa. 202; Brobst v. Reading, 236 Pa. 627.

Where written authority of the city engineer for alleged extra work is required by the terms of a municipal contract, the contractor cannot recover for extra work without first obtaining such written authority from the city engineer: Malone v. Phila., 147 Pa. 416; McManus v. Phila., 201 Pa. 632; Union Paving Co. v. Phila., 263 Pa. 577; Longstreth v. Phila., 245 Pa. 233.

The contract provides that the contractor shall assume the burden of difficulties in the work encountered by reason of substructures: Mundy Paving & Construction Co. v. County, 299 Pa. 225.

The certificates of the city engineer as to the amount of work done and material furnished by plaintiff contractor are, in the absence of fraud, conclusive and binding upon the contractor without exception or appeal: Ruch v. York, 233 Pa. 36; McManus v. Phila., 201 Pa. 632; McHugh v. Phila., 62 Pa. Superior Ct. 550.

*Wm. Williams,* with him *Frank J. Hartmann* and *Robert L. Franke,* for appellee.—The contract was legally made by the city pursuant to sufficient legislation, and even if there were some irregularities, the city cannot, at this time, deny the existence of that contract or its liability thereunder: Aspinwall-Delafield Co. v. Aspinwall Boro., 229 Pa. 5; Bradford v. Tel. & Tel., Co., 206 Pa. 582; Louisiana v. Wood, 102 U. S. 294; Addystone P. & S. Co. v. Corry, 197 Pa. 41; McKnight v.

Pittsburgh, 91 Pa. 273; City v. Hays, 93 Pa. 72; Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Chester v. Eyre, 181 Pa. 642; Tarentum Boro. v. Moorhead, 26 Pa. Superior Ct. 273.

The unit prices in the contract might prevail if the contract was practically followed, but where the city changes the location of the work making the costs of the extra work or extra distance much greater than the contract unit, the city is liable for this extra work: Wood v. Fort Wayne, 119 U. S. 312.

The city could waive the requirements of written orders and substitute oral orders therefor and therefore are bound to pay for the work actually done under the oral orders: Cramp & Co. v. Corp., 268 Pa. 14; Murphy v. Bank, 184 Pa. 208; Focht v. Rosenbaum, 176 Pa. 14; Cunningham v. Church, 159 Pa. 620.

It was the duty of the city engineer to issue certificates to the contractor for extra work as the work progressed and his failure, neglect and refusal to do so will not relieve the city from liability to pay for this extra work: Pittsburgh Terra-Cotta Lumber Co. v. Sharp, 190 Pa. 256; Clark & Sons Co. v. Pittsburgh, 217 Pa. 46.

OPINION BY MR. JUSTICE SCHAFFER, May 27, 1931:

Plaintiff, Morgan, brought this action against the City of Johnstown, with which he had a contract for the building of a sewer, to recover the sum of $23,825.98 for extra work. The jury found in his favor for $18,-157.34. The city, appealing to us, contends that there was no valid contract; that there can be no recovery for the items in question on the basis of extra work because the work is covered by unit prices in the contract; that since the contract provided that changes or extra work should be ordered by the city engineer in writing, the contractor cannot recover for the extra work, as he has no written authorizations therefor; and that the representatives of the municipality may not impliedly and informally waive the terms of the written contract and

thereby incur liability for extra work beyond the price stipulated in it for the completion of the undertaking.

Was the contract valid? The position of the city on this inquiry is to say the least most ungracious and unfair. Admittedly the sewer has been built and properly built, at a cost to the city of more than $170,000, which it has paid. It is alleged that plaintiff in his proofs failed to produce an ordinance authorizing the execution of the contract; that there was no prior appropriation shown to have been made for the purposes of the contract and that the superintendent of streets and public improvements had no express authority to enter into the contract.

Before meeting the extreme position assumed by the city that there was no valid contract, we think it may be well to observe the language which we have heretofore used when speaking of municipalities' obligations so far as fair dealing is concerned as related to constitutional and legislative requirements: "The constitutional restriction was not intended to make municipalities dishonest, nor to prevent those who contract with them from collecting their just claims": Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, 49. "Such a consideration [that an appropriation had not been made by the city authorities in accordance with constitutional requirement] cannot be controlling, if the result would be to enable the municipality to escape its honest obligations, under a valid contract": Hallock v. Lebanon, 215 Pa. 1, 7.

It is set up that before the contract in question could take effect as a contract, it was necessary to have on it the certificate of the superintendent of accounts and finance, as required by section 1 of the Act of July 15, 1919, P. L. 968, which provides: "Every contract involving an appropriation of money shall designate the item of appropriation on which it is founded; and the estimated amount of the expenditure thereunder shall be charged against such item, and so certified by the

superintendent of finance on the contract before it shall take effect as a contract, and the payments required by such contracts shall be made from the fund appropriated therefor." On the contract is the certificate of the city engineer as to the estimated cost of the work and that the sum named shall be paid out of the sanitary sewer fund. Beneath this certificate is one by the superintendent of accounts and finance that "funds are available for the above work in the amounts stated above." We think it hypercriticism to say that this did not comply with the provisions of the act. The contract, which is one of great detail, taking up seventy-eight of the printed pages of the record, is signed by the City of Johnstown, by its superintendent of streets and public improvements, under the seal of the city, attested by the city clerk, with the certificates heretofore mentioned. It was preceded by a resolution of the city council certified by the mayor and city clerk, awarding the contract to plaintiff. An ordinance had been duly passed creating a fund known as the sanitary sewer fund into which it was provided all money realized from the sale of certain bonds should be paid and not only had the bond of the contractor for the fullfilment of the contract been received and approved, but the minutes of the city council likewise show that the contract was approved. We are of opinion that under these circumstances it does not lie in the mouth of the city to question the validity of the contract now that it has been fully executed.

The city is on firmer ground in its further contention that as written orders of the city engineer for alleged extra work are required by the terms of the contract, the contractor cannot recover for extra work without first obtaining such written authority from the city engineer. The contract contains the following provision as to extra work: "For extra work ordered in writing, the contractor agrees to accept as full compensation and the city agrees to pay the true necessary cost of the ac-

tual labor, materials and work as determined by the engineer, plus fifteen per cent of such cost for superintendence and the use of tools. The engineer will furnish to the contractor at the close of each day's work an itemized statement, showing in detail all such extra work done during that day. It shall be the duty of the contractor to furnish any information required by the engineer to prepare such statement and to determine that such statement is prepared, covering all extra work for which he expects to receive compensation. Any claims for additional compensation by reason of errors in the daily statement of extra work issued by the engineer must be filed with the engineer within five days of the date of such statement, and failure to file such claim within such period will indicate that said statement is accepted as correct." In addition, the contract provides: "The engineer shall have the right and power to make any alterations in lines, grades, positions, dimensions, details or quality of material, etc. Such changes shall be ordered in writing by the engineer and shall not be a basis for a claim for additional compensation unless there shall be an actual and material increase in expense." Nowhere in the contract is there any intimation that the oral direction of the city engineer shall bind the city. The contract further reads: "The contractor agrees that the quantities and measurements taken and the estimates and certificates made by the city engineer shall be final and conclusive evidence of the amount of material furnished and work performed by the contractor under and by virtue of his contract, and should be taken as the full measure of compensation to be received by the contractor without exception or appeal." It is admitted that there was no written order or authority from the city engineer for any of the work claimed for. The contractor testified that he had been paid the amounts awarded him by the certificates of the city engineer, and that the work for which he brought this suit was not covered by any cer-

tificates. Under the terms of the contract he could not recover for work done or materials furnished without first showing the certificate of the city engineer. Whatever the rule may be as to the waiver of such a requirement in contracts with individuals, as to municipal contracts we have held in a long line of cases, such as Malone v. Phila., 147 Pa. 416; McManus v. City of Phila., 201 Pa. 632; O'Rourke v. Phila., 211 Pa. 79; Ruch v. York, 233 Pa. 36; Brobst v. City of Reading, 236 Pa. 627; Cunningham v. Dunlap, 242 Pa. 341; Union Paving Co. v. Phila., 263 Pa. 577; Willis v. York County Directors of the Poor, 284 Pa. 138, that the provisions of such contracts must be strictly pursued. As this contract provided that the only foundation for claims against the municipality for extra work was the written certificate of the engineer, no other kind of claim can be sanctioned. It is argued that the city impliedly waived the provisions of the contract by not insisting upon strict compliance with its terms, in that the members of city council ordered changes in the execution of the work, not by written order, but verbally, which were made by the contractor and paid for by the city without the certificate of the engineer. We are of opinion that this without formal action by city council could not affect the terms of the written contract. We refuse to conclude, in the case of municipal contracts, that the payment of certain items, for which no order in writing was given, when the contract provides that it shall be, results in a general waiver of the requirement of the written contract in this respect so as to form the basis for an additional claim.

The court below in its opinion on the motion for a new trial and for judgment non obstante veredicto concluded that the city had waived strict compliance with the provisions of the contract as to extra work. There is no evidence in the record of any action by city council waiving the terms of the contract. The court relied upon Shiloh Street, McCormick's App., 165 Pa. 386, but

in that case there was a subsequent ratification by council of what was done. Here there is nothing of that kind. All that is claimed as the basis for a waiver is that the individual members of council knew what was being done and approved it, and that the city acquiesced in this performance by accepting and paying for work for which the only authorization or certification was in oral form. The cases of McKnight v. City of Pittsburgh, 91 Pa. 273; City v. Hays, 93 Pa. 72; Silsby Mfg. Co. v. Allentown, 153 Pa. 319, cited by the court below for its conclusion, do not warrant it. In each of these cases there was a subsequent express ratification by resolution of the city council. Here the claim made and recovery had is in the teeth of the explicit provisions of the contract and no action was taken by the city council amounting to a waiver or abrogation of these provisions, or to a ratification of the work done. That individual councilmen or other city authorities knew of the altered method of doing the work and approved it cannot be set up by the contractor to warrant his claim for extra work, where the written contract provides upon what his claim must be based. The agreement cannot be waived or altered in any such loose way. If it is to be changed, it must be by the same formal municipal action that created it. We said in Brobst v. City of Reading, 236 Pa. 627, 629: "His contract was with the City of Reading, and not with its engineers or board of public works. ...... What the city engineer and the board of public works permitted the appellant to do was not the city's permission. He had contracted, as just stated, not with them, but with it, and they were without authority to make a new contract with him to bind it. The powers of the engineer were to interpret the contract, not to change it. ...... No deviations from the approved plans and specifications were to be allowed, unless by written consent of the city engineer, approved by the board of public works. For, what was more than a mere deviation by the appellant from his

contract with the city, he did not even have the written consent of the engineer."

Kuhn v. Com., 291 Pa. 497, in principle applies to the case at bar. That was a claim for damages for an alleged breach of contract to print hunter's license tags for the State. Plaintiff contended that he was entitled to print the tags by virtue of an oral agreement with the superintendent of printing and binding outside the written contract that he had with the Commonwealth. We said: "There being no claim of fraud, accident or mistake, the rights of the parties were governed by the written contract. ...... The only contract approved by the governor, the auditor general and state treasurer was the one in writing, and without their approval any contract relating to state printing was invalid. ...... In letting contracts for public work, all bidders must have a common standard and no private arrangements can be recognized. ...... A municipality is bound by the terms of a construction contract which it has executed and not by the unauthorized representations or declarations of its officers, which would change the written stipulations of the agreement."

The principal claim of the plaintiff is based upon the fact that the line of the sewer was changed and the allegation that this created the necessity for his doing extra work at additional expense. It is not denied that the change was made. If the plaintiff was not willing to proceed under the contract, he should have refused to go on with the work until he obtained the proper written authority of the engineer. The evidence, however, shows that the contractor himself requested that the sewer should be moved because of the impossibility of using a ditching machine at the location originally designated on the plans.

Under the terms of the contract and in the absence of evidence to show any formal waiver thereof by the city authorities, the plaintiff cannot succeed with his claim,

and the defendant's motion for judgment in its favor should have prevailed.

The judgment is reversed and is here entered for defendant.

Supplemental Opinion by Mr. Justice Schaffer, April 11, 1932:

After careful consideration of the matters presented to us on reargument, we are not convinced that our previous rulings are incorrect. We, therefore, confirm the opinion heretofore handed down and order that judgment shall be entered as therein directed.