## O'Neill Construction Company, Inc., Appellant, *v.* Philadelphia.

Argued April 20, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Arthur W. A. Cowan* and *Archibald T. Johnson,* with them *Joseph P. Gaffney* and *Duane, Morris & Heckscher,* for appellant.

*James Francis Ryan,* Assistant City Solicitor, with him *Joseph Sharfsin,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE STERN, May 25, 1939:

In the construction of the Little Tacony Creek sewer, from a point southwest of Lewis Street to the junction of Little Tacony and Frankford Creeks, the City of Philadelphia let the job in two sections, one extending

from the northeasterly end to a point about 700 feet northeast of Frankford Creek, and the other completing the sewer southwesterly to that creek. The first section was constructed by the firm of Mazola & Morana and was finished about a year before the second was begun. Plaintiff company was the low bidder on the latter job. It entered into a contract with the city, in which it agreed to perform the work in accordance with the specifications, the proposal, and the approved plans as shown upon the drawings. The sewer required an excavation of a width of 12 ft. 10 in. and a depth of 11 ft. 6 in.; its center line ran along or close to the northwesterly edge of Little Tacony Creek. Plaintiff began its work at the junction of the two creeks, proceeding northeasterly, and for a distance of about 180 feet met with no unusual difficulty. Beginning at that point, and for the remaining 520 feet of its contract, it encountered a submerged mass of cribbing buried some two or three feet under the surface and apparently constructed by some former owner of the abutting land in order to prevent erosion of the bank. It lay in the northwesterly half of the area of the sewer excavation, and formed a compact structure approximately 8½ feet in width and of equal height, with long, heavy timbers laid longitudinally and railroad ties crosswise. To remove it required considerable extra labor, and the present suit in assumpsit was brought to recover the sum of $23,474.88, with interest, alleged to represent the additional cost to plaintiff of excavation made necessary by this unexpected condition. The case was tried without a jury under the Act of April 22, 1874, P. L. 109. Judgment was entered for defendant.

Ordinarily, as plaintiff admits, a contractor is presumed, in the absence of an express provision to the contrary, to have assumed the risk of unforeseen contingencies arising during the course of the work, unless performance is rendered impossible by an act of God, the law, or the other party: *Cramp & Co. v. Central*

*Realty Corporation,* 268 Pa. 14, 20. Plaintiff's claim
rests upon an alleged misrepresentation made by the
City in the plans upon which plaintiff based its bid.
These plans showed six borings, 100 feet apart, from
7 to 13 feet in depth, and purporting to have been made
along the center line of the sewer. At these points they
represented the subsoil as consisting of successive layers
of sand and loose stone, soft rock, and underlying hard
rock, but did not show any artificial obstruction. The
borings, with one exception, had not in fact been made
on the center line of the sewer but alongside a retaining
wall on the southeasterly bank of the creek about 12
feet distant from that line. The results there obtained
were accurately represented on the plans, but, as pre-
viously stated, locations of all but one of the borings
were not correctly shown. How this came about is not
explained in the testimony. The city inspector who
was present when the borings were made accurately
recorded in his field book that "except as noted, all test
borings are located approximately 16 inches north of
the concrete retaining wall on the south bank of creek,"
but whether the draftsman of the plans negligently
failed to copy this thereon, or whether he considered it
unimportant that the borings were shown as on the
center line of the sewer instead of twelve feet away,
does not appear.[1] The court below found that "all the
'misrepresentations' were innocent," and this finding
was justified by the evidence, since there was nothing
to indicate any deliberate or intentional design on the
part of the draftsman or of anyone else in the Bureau
of Engineering and Surveys to mislead bidders as to
the actual condition of the subsoil.

---

[1] The principal assistant engineer of the Bureau of Engineering
and Surveys testified that in making borings a shifting up to 25
feet from the center line of a piece of work is not important, be-
cause the character of the subsoil is not likely to vary much in
that distance.

The defense presented by the City to plaintiff's action was the presence of certain clauses in the proposal forms and in the standard specifications absolving the City from liability in case the borings as shown on the plans did not properly represent the physical conditions. One such clause in the proposal forms was as follows: "Prospective bidders should determine for themselves the subsoil conditions that will be met with in the prosecution of the work. The record of test borings shown is not guaranteed by the City. Refer to clause A-76 of the Standard Specifications." A clause in the specifications provided: "Bidders must examine the location of the proposed work and make themselves acquainted with the conditions on the ground and the character of material to be encountered." Another clause in the specifications (A-76, entitled "Borings") was as follows: "Where borings and underground and overhead structure locations are of record in the Bureau, they were made for the information of the Bureau, as an aid to complying with the provisions of the Act of Assembly of June 25, 1919; their correctness is not guaranteed by the City, and in no event is this information to be considered as a part of the contract. If this information is used by a bidder in preparing his proposal, he must assume all risks resulting from conditions differing from approximation shown. If the bidders desire to obtain such data, the City will afford them the opportunity at their own expense, to make wash drillings, core borings, or dig test pits on the site of the work."

Plaintiff relies upon cases in various jurisdictions holding that clauses in a contract which provide for immunity against liability for fraudulent misrepresentation are invalid and unenforceable. Thus in *S. Pearson & Son, Ltd. v. Dublin Corporation,* (1907) A. C. 351, the defendant corporation furnished plaintiffs with plans and specifications for the construction of sewage works. In the plans, representations were made as to

the position of a certain wall. In the contract it was stipulated that the contractor should satisfy himself as to the dimensions and nature of all existing structures and that the corporation did not hold itself responsible for the accuracy of the information as to the sections or foundations of existing walls and that no charges for extra work or otherwise would be allowed in consequence of incorrect information or inaccuracies in the drawings or specifications. Plaintiff brought an action of deceit against the corporation, claiming damages for false representations as to the position, dimensions and foundations of the wall, whereby they had been put to greater expense in performing the contract than would otherwise have been required. It being shown that the representations had been made by the corporation either with a knowledge of their falsity or with reckless indifference as to whether they were true or false, it was held by the House of Lords that the plaintiffs were entitled to recover notwithstanding the protective provision of the contract, on the ground that this clause afforded immunity only as to honest mistakes, and that "no one can escape liability for his own fraudulent statements by inserting in a contract a clause that the other party shall not rely upon them"; (per Lord LOREBURN, L. C., at pp. 353, 354). There have been several cases in the United States Supreme Court to this same effect: *Hollerbach v. United States,* 233 U. S. 165; *Christie v. United States,* 237 U. S. 234; *United States v. Atlantic Dredging Co.,* 253 U. S. 1. In the Hollerbach case it was decided that cautionary provisions which required the plaintiffs to inform themselves in regard to the nature of the work by visiting the site and making their own estimates of the difficulties attending the execution of the contract did not protect the defendant against liability for its misrepresentation as to conditions existing there. In the Christie case there were erroneous and deceptive borings and misrepresentations in the specifications and drawings; it was

held that a provision that bidders must inform and satisfy themselves as to the nature of the material to be excavated did not absolve the defendant from liability, even though the misrepresentations had not been made with any sinister purpose. In the Atlantic Dredging Company case the map exhibited to bidders showed that the material to be encountered by the contractor was mud and sand, it being represented that this had been ascertained as the result of borings. The material in fact was quite different, and the contractor was allowed to recover for the greater expense occasioned thereby, although there was no element of actual fraud, and notwithstanding clauses in the contract that bidders were expected to examine the work and decide for themselves as to its character, that the United States did not guarantee the accuracy of description, and that no guaranty was given as to the correctness of the borings in representing the character of the material to be removed although the information given was believed to be trustworthy. There were self-exonerating clauses of substantially similar phraseology involved in the litigation in *Passaic Valley Sewerage Commissioners v. Holbrook, Cabot & Rolling Corporation,* 6 F. (2d) 721; *Pitt Construction Co. v. City of Alliance, Ohio,* 12 F. (2d) 28; *Jackson v. State,* 205 N. Y. Supp. 658, affirmed 241 N. Y. 563; *Ganley Bros. Inc. v. Butler Bros. Building Co.,* 170 Minn. 373, 212 N. W. 602. In all of these cases it was held that such provisions afforded no shield against conscious misrepresentation or anything but mere inaccuracies and innocent mistakes.

It is unnecessary in the present case to determine—in the absence of precedents in our own jurisdiction—to what extent the rule laid down in these authorities should be accepted as the law of Pennsylvania, because the facts here are different, both in respect to the terms of the contract (as to which the learned trial judge said: "What words could be stronger?"), and in regard to the alleged misrepresentations concerning the

borings. The specifications and the proposal forms not only provided, as in the cases cited, that bidders must determine for themselves the conditions of the subsoil and that the correctness of the borings shown on the plans was not guaranteed by the City, but bidders were notified that the borings were made for the information of the Bureau in order to enable it to comply with the provisions of the Act of June 25, 1919, P. L. 581, article XX, section 2, which requires the department having charge of an improvement to estimate its cost, so that no bid in excess of the estimate should be accepted and that the liability of the City in the contract should be limited by the appropriations. It was further stated that "In no event is this information to be considered as a part of the contract." Since the plans were, by reference, a part of the contract, this statement was equivalent to notice that the information furnished by the borings was not to be considered as a part of the *plans*. In effect, therefore, the borings were as much obliterated from the plans as if physically erased, and their appearance thereon was relegated to the status of private memoranda for the City's own purpose.[2]

There is another feature of the case which prevents recovery, regardless of any construction placed upon these provisions of the contract, namely, that plaintiff failed to prove any misrepresentation that was material and from which it suffered damage. It complains that the borings were represented as being on the center line of the sewer when in fact all but one were made at points several feet distant therefrom. This, it is true, was a

---

[2] It may be noted that the present action is in assumpsit for breach of warranty, and that, since the specifications stated that the correctness of the borings was not guaranteed by the City and that the information given thereby was not to be considered as a part of the contract, an action for breach of warranty could not be sustained, and if any recovery at all were possible it would have to be effected through an action in trespass for fraudulent misrepresentation or deceit.

misrepresentation, but one that in itself was of no moment. Plaintiff did not establish by evidence that the condition of the subsoil along the center line of the sewer was other than what the borings represented it to be. Whether they were actually taken there or not, if they properly showed the nature of the subsoil along the center line no material misrepresentation was made, nor was plaintiff injured even if it did rely upon their having been made at the places indicated on the plans. The evidence was to the effect that the center line of the sewer approximated the northwesterly edge of the creek, but the cribbing was mostly under the northwesterly bank; whether or to what extent it reached to or beyond the center line of the sewer was not satisfactorily established by the evidence. It is significant that at the one point where admittedly a boring was made on the center line no cribbing was discovered. The court below justifiably found, therefore, that even if the borings had been made on the center line as indicated by the City's plans, "they would have only probably or possibly disclosed the presence of the ties, since the cribbing of the ties was in the north bank of the creek and not in the bed thereof except where there had been a collapse of the bank." It was not sufficient for plaintiff to show possibility or even probability; in order to establish a material misrepresentation it was bound to prove that the subsoil along the center line of the sewer was in fact other than that shown on the plans, and this it failed to do. In this respect the case bears close resemblance to *Mundy Paving & Construction Co. v. Delaware County*, 299 Pa. 225, where the borings indicated only soft earth between the ground elevation and rock surface, whereas a submerged wooden substructure occupied practically the entire excavation area, but, in point of fact, there was nothing other than soft earth at any of the boring points indicated on the plan. The court said (p. 231) that "The plan of borings at the six points furnishes no valid basis for the

assumption that nothing but [soft earth] would be encountered at other places in the vicinity" and that "even though it be assumed that the plans furnished plaintiff by defendant were intended to indicate, as far as they went, the character of work which plaintiff was to do in the fulfillment of its contract, yet the boring plan, showing conditions as they appeared at the several points where borings were made, cannot justifiably be construed, in accord with plaintiff's contention, as such a representation by defendant concerning subsurface conditions in the vicinity of the bridge . . . as to charge defendant with misrepresentation."

Plaintiff, in addition to its claim that the City was guilty of an affirmative misrepresentation, also attempted to establish its case on the ground of active concealment or deliberate suppression of facts. But there was no duty on the part of the City, especially in view of the provisions of the contract, to volunteer any information it may have possessed. Moreover, while the court below found that the City was aware "of the existence or probable existence within the contract area of the ties or other timbers used as cribbing, and failed to show them on the plans," nothing was definitely proved as to the extent of such knowledge. There was evidence that the Bureau knew that some cribbing had been found at the southwesterly end of the section of the sewer constructed under the Mazola & Morana contract, and that the contractor who made the borings for the City learned of the presence of cribbing in or around some portion of the region of excavation, but exactly where it was, and whether it existed, to the knowledge of the City, over such a considerable area as to make its non-disclosure actionable, even were there a legal duty on the part of the City to make *any* disclosure, was not established by the evidence.

Judgment affirmed.