Burke *v*. Allegheny County, Appellant.

Argued October 4, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*James A. Wright,* Assistant County Solicitor, with him *Walter P. Smart,* County Solicitor, for appellant.

*John H. Lauer,* with him *H. R. Birmingham,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 27, 1939:

Earl B. Burke entered into a contract with the County of Allegheny for the construction of approaches to a bridge. He was paid the sum of $88,931.97 for the work done and the county admits there is still due him $1,198.30. He refused to accept this sum and claimed there was still due him $25,219.12, with interest. To recover this amount he brought the present action. The jury found a verdict in his favor for $9,277.06. From the judgment entered on the verdict the county appeals.

The level of the bridge in question had been raised. It was, therefore, necessary that the approaches be reconstructed to meet the new level. The structure of the bridge consisted of two parallel side foundation walls leading to the bridge connected with each other by a number of tie or cross walls. The contract provided for the erection of new side and tie walls and for filling between that portion of the walls projecting above the original surface of the ground and the paving of the approach. It divided the work to be done and the materials to be furnished into various items, and set forth the estimated quantity of each. A unit price was bid for each of these respective items. The contract stated that the estimates set forth were only approximate and that the contractor should be paid for the actual work done and materials supplied in accordance with its terms and specifications. The contract was completed in compliance with the plans and specifications.

The principal dispute is as to the amount of excavation for which plaintiff is entitled to be paid. He contends that the only practical way to do the excavating, in order that the walls for its approaches could be built, was to remove all the earth between the side walls down to the base of the footer course and for a certain distance outside of the walls. He testified that he so excavated. The county urges that, even if he did so excavate, which is disputed, this was simply a method of performing the work, and he can be paid for only certain portions thereof, under the provisions of the contract. The only item covering excavation was Item 1, entitled Excavation for Foundations contract. In the Supplemental Instructions to Bidders, expressly made part of the contract, it is provided: "The quantities of Excavation for Foundations to be paid for under Item 1 shall be determined as specified under Item 17 of the Schedule of Items on Page 20 of the Standard Contract." The Standard Contract contains the following language: "17. Excavation for Foundations. . . . The quantity to be paid for shall be the actual volume excavated between the neat lines [trench lines] of the base of the structure and the original ground surface or bed of stream before work was begun, the sides of the excavation being considered as vertical."

In his statement of claim plaintiff alleged that the extra excavation for which compensation is sought was caused by "the impractical and erroneous requirements of the plans and specifications for the performance of the construction work on the south approach, to-wit, providing only for excavation to the neat lines of wall construction." The complaint that the specifications are impractical cannot prevail. If plaintiff was not satisfied with the specifications, he should have had them altered before bidding or executing the contract. After he signed it, he was bound by it. An allowance to plaintiff of compensation for work not provided for in the contract and not directed by the county commissioners,

would be to substitute a new contract for the one signed. Under the bidding requirements, bidders were required to examine the location of the work and to determine, in their own way, the difficulties likely to be encountered in its prosecution. In the contract plaintiff declared that he had read each and every clause in the advertisement, instructions to bidders, schedule of items, specifications and articles of agreement, fully understood the meaning of the same, and that he had thoroughly examined the contract, plans and specifications, and the location of the proposed improvements, and fully understood the character of the work to be done under the contract. Plaintiff must be restricted in his recovery to the terms of the agreement which he signed: *O'Neill Const. Co., Inc., v. Phila.*, 335 Pa. 359, 6 A. (2) 525.

Plaintiff in his brief on appeal stands upon the proposition that payment for the excavation he did is regulated, not by Item 17 of the standard form of contract, but by Item 93. We are unable to reach this conclusion. Item 93 deals with the excavation work necessary to properly *grade* the approaches. This is demonstrated by a reading of Item 93 (a): "Approach excavation shall consist of the removal and satisfactory disposal of all materials taken from within the limits of the work, including widening of curb and the flattening of slopes necessary for the construction and preparation of the roadbed, subgrade, shoulders, ditches, waterways, intersections, private entrances and work incidental thereto, as indicated or directed." It was not contemplated that this excavating would be paid for as part of Item 1. The contract expressly provided otherwise in Item 17. In addition, paragraph 9 of the Supplemental Instructions to Bidders sets forth: "Compensation for all excavation to be done under this contract except the excavation to be paid for under Item 1 shall be included in the price bid under Item 2." Item 2 is the quantity of embankment "measured in place at the conclusion of the work." Therefore, even if it be assumed that the excavation claimed

does not come within Item 17, but rather under Item 93, this would not help plaintiff, as there is no provision for payment for the work as a separate and distinct item, but he was to be compensated for this excavating in the price he was paid for the embankments and fills erected. Even under Item 93, it is provided, "that no excavation beyond authorized lines shall be included for payment." The authorized lines as shown by the plan were "the neat lines of the base of the structure and the original ground surface . . . the sides of the excavation being considered as vertical."

The second item of plaintiff's claim is for embankments or fills constructed by him. Item 2 of the Bidding Schedule covers embankments. On this item also it is claimed that the additional embankments were made necessary by reason of the "impractical and erroneous requirements" of the plans and specifications. The amount paid to plaintiff for embankments and fills under Item 2 was for the amount of embankment or fills contained between the old level of the approaches and the new. Plaintiff claims, however, that he is entitled to be paid for the entire amount of embankments or fills constructed by him. Here again his contention cannot be supported under the terms of the contract. Paragraph 9 of the Supplemental Instruction to Bidders provides: "The price bid under Item 1 shall include compensation for backfilling to the original surface of the ground. The quantity of embankment to be paid for under Item 2 shall be the actual volume filled, measured in place at the conclusion of the work. The amount of embankment shall be determined in the following manner:—Cross sections of the site shall be taken before any work is done and again at the completion of the work. From these cross sections the actual volume of embankment between the original surface of the ground at the time of commencing work and the payment lines shall be determined." Therefore, plaintiff was only to be paid for the embankments or fills erected between the

original surface and the new. The fact plaintiff found it necessary in order to complete the work to excavate all the old embankments and fills does not entitle him to be paid for replacing them, when the contract itself specifically provides otherwise.

Other items of claim made by the plaintiff were for excavation for the removal of old stone walls and side slips of stone; for the removal of old paving bases and depositing embankments thereon; for increased expense to which he was put when he found it necessary to decrease the length of the steel reinforcement bars placed by him in the walls, and for steel sheet piling purchased by him and not used. It is the contention of the county that the plaintiff is barred from recovery on these items by the express provisions of the contract.

The contract provided, inter alia,[1] "The specifications and Contract Plans, herein referred to, may be modified and changed from time to time *as may be agreed upon in writing* between the Commissioners and the Contractor in a manner not materially affecting the substance thereof, if such changes are necessary to carry out and complete more fully and perfectly the work to be done and performed. . . .

"In case work is added which cannot reasonably be classed with any material or work for which a contract unit price is established, the Commissioners shall be and are hereby given power and authority to order the Contractor to furnish the additional work or material which they may deem necessary or advisable. In case the Commissioners and the Contractor are able to agree upon compensation for such additional work and materials, then the Commissioners *shall order, in writing,* the said work to be done at the price or prices agreed upon; in case the parties hereto are not able to agree upon the compensation therefor, then the Commissioners *shall in writing, order* the work to be done or the materials fur-

---

[1] All italics supplied.

nished and the Contractor agrees to accept as full compensation for such work the actual reasonable cost of the labor and material, as determined by the Director, plus fifteen (15) per centum of such cost, . . . Unless the Contractor has received *a written order* of the Commissioners for extra work, it will be deemed taken and treated as conclusive by all parties hereto that no extra work has been ordered or done. . . .

"All claims for extra compensation over and above the amount agreed upon in this contract, on account of any alterations or changes, or for any extra work, shall be filed with the Director by the contractor with a copy of the original order for such alterations or changes or extra work attached thereto, within thirty (30) days after the completion of said alterations or changes, or extra work, and the Contractor shall, before starting work on said alterations or changes or extra work, notify the Director *in writing* of his intention to file such a claim, in order that a proper record of such work may be kept by the Director. Should the Contractor fail to notify the Director or to submit his claim within thirty (30) days as required, it will be taken as conclusive evidence that no claim exists."

Plaintiff concedes that these claims are in fact for extra work as they were of a kind for which no unit price was established. The claim for them is on a quantum meruit. It is admitted that the provisions of the contract relating to extra work were not complied with and, therefore, plaintiff cannot recover for these items: *Union Paving Co. v. Phila.*, 263 Pa. 577, 107 A. 370; *Morgan v. Johnstown*, 306 Pa. 456, 160 A. 696. He contends that the provisions of the contract, above quoted, have no reference to his claim, as the total amount of the claim is less than the total price bid on the estimated quantities of work and material. This, however, is unimportant. Extra work, under the terms of the contract, is work for which no unit price is established. The fact that the total claims do not exceed the

total bid does not prevent the work claimed for from being extra work. The court below held the provisions of the contract requiring written notice of extra work had been waived by the county. It has been pointed out that provisions such as these in a municipal contract cannot be waived: *Morgan v. Johnstown*, supra.

As to the plaintiff's claim for steel sheet pilings purchased by him it is true there was offered in evidence a letter from the Director of Public Works requesting him to have steel sheet piling available for use. The contract expressly sets forth that extra work not provided for in the contract must be authorized in writing by the county commissioners. The fact that this work was authorized in writing by the Director is not a compliance with the terms of the contract.

In addition to what has been said, the contract provides that any questions or disputes arising shall be referred to the county commissioners, whose decision and award shall be final and that all rights of action at law are waived. The county commissioners dispute the right of plaintiff to recover as he has not submitted any questions to them for determination. While it is contended on plaintiff's behalf that no final estimate has ever been made by the Director of Public Works and that under the terms of the contract reference of questions under the arbitration provision were not to be made until after the preparation of the final estimate, we think it was up to plaintiff to have endeavored to have a final estimate made if he was not satisfied that the one made was final.

Whether section 348 of the County Code of May 2, 1929, P. L. 1278, 16 PS Sec. 348, covering contracts made by county commissioners, is applicable to the contract here in question need not be determined. It is argued that it is not, because contracts for building, rebuilding or repair of bridges are excepted from its provisions. Here, there was a written contract and

whether the act of assembly required it, when he signed it, plaintiff was bound by its terms.[2]

It is directed that the court below shall modify the judgment heretofore entered and shall enter judgment for the amount admitted to be due, $1,198.30, with interest thereon.

[2] The language of the section is, "All contracts made by the commissioners of any county involving an expenditure exceeding one hundred dollars, except contracts for building, rebuilding, or repair of bridges, or for painting or tightening the bolts of iron bridges as hereinafter provided for, shall be in writing, and shall, immediately after their execution, be filed with the controller." Sections 701 and 704, 16 PS Secs. 701 and 704, apparently specifically provide that such contracts must be in writing where the contract is over $500, as here.