## Montgomery, Appellant, v. Philadelphia.

Argued November 15, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

 reargument refused March 25, 1958.

*Robert H. Arronson*, with him *Herbert H. Hadra* and *Maurice Freedman*, for appellant.

*Joseph V. Furlong, Jr.*, Assistant City Solicitor, with him *James L. Stern*, Deputy City Solicitor, and *David Berger*, City Solicitor, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 16, 1958:

This is an appeal from the order of the common pleas court sustaining defendant's demurrer to plaintiff's amended complaint in assumpsit.

The amended complaint avers that on July 12, 1955, the plaintiff entered into a contract with the City of Philadelphia in which he agreed to furnish all the la-

bor and materials to ". . . do all general construction work in the course of the construction of a Civic Auditorium (more commonly known as The Dell), in Fairmount Park . . ." for the price or sum of $256,294. Plaintiff contends that due to the misrepresentations of the city as to the character of the soil involved in the construction upon which he was entitled to rely, the cost of excavation to complete performance was increased by $52,091. He further alleges that after it was discovered that the soil was not decayed mica, as anticipated,[1] but rock, he was enticed and induced to continue the excavation by the assurances of city officials that his demands would be duly considered. He also maintains that he is entitled to recover the sum of $20,491.22 for additional work and materials supplied in accordance with orders issued by authorized agents of the defendant. Plaintiff finally claims an additional $15,402.44,[2] as the alleged balance due on the original contract price of $256,294. Defendant's preliminary objections to the amended complaint in the nature of a demurrer averred that plaintiff failed to state a cause of action for the following reasons: (a) by the terms of the Notice to Bidders which is incorporated in the contract by reference, defendant city is not responsible for the accuracy of soil conditions inasmuch as plaintiff assumed full responsibility for soil conditions; (b) plaintiff's action insofar as it exceeds the contract limitation and appropriation for same is barred by law; (c) by the terms of the contract, no claim for extras can be allowed unless ordered in writing by the engineer and approved by the recreation commissioner. Plaintiff does not aver that

---

[1] The drawings incorporated by reference into the contract contained notations which so indicated.

[2] The City admits this sum to be due.

he has complied with this condition precedent provided for in the contract.

Throughout the complaint, plaintiff alternately bases his claim for relief upon contract or quasi-contract. A consideration of both theories of recovery reveals no basis in law for the allowance of plaintiff's claim.

The contract provision involved in plaintiff's first contention states in paragraph (3) of the Notice to Bidders (an extract from the Standard Contract Requirements of the City of Philadelphia), which by law is incorporated into the contract, that bidders are required to acquaint themselves with the Standard Contract Requirements and examine in detail the character of the soil and the site of the work to be done under the contract. In addition to these general admonitions as to inspection of the situs, paragraph (3) further provides that: "Where borings, test piles, and existing underground and overhead structure locations are shown, they are for the information of the City; their correctness is not guaranteed by the City, and *in no event is this information to be considered as a part of the contract.* If this information is used by a bidder in preparing his proposal, he must assume all risks resulting from conditions differing from the approximation shown. If bidders desire to obtain such data, the City will afford them the opportunity, at their own expense, to make borings or soundings, to drive test piles, or to dig test pits on the site of the work." (Emphasis supplied). The contract further provides: "PLANS AND SPECIFICATIONS. Drawings— Sheets 1 to 8, L-1, S-1, M-1, E-1 and E-2, all inclusive, dated December 28, 1954, with notes thereon, together with these specifications and their Standard Contract Requirements and Special Conditions form the basis upon which the Contracts are made. . . ." "GENERAL.

The Contractor shall accept the site as he finds it. All excavation is unclassified. The type of soil and depth at which rock may be reasonably encountered is assumed to be such as shown in the table of test borings shown on Drawing. The locations of these borings are also shown on Dwg. No. 1."

Plaintiff's argument that he had a right to rely on defendant's representations as to the condition of the soil. is effectively answered by the decision of this Court in *O'Neill Construction Company, Inc. v. Philadelphia,* 335 Pa. 359, 6 A. 2d 525, where, concerning an almost identical clause, on pps. 365, 366 it is stated: "It is unnecessary in the present case to determine— in the absence of precedents in our own jurisdiction— to what extent the rule laid down in these authorities should be accepted as the law of Pennsylvania, because the facts here are different, both in respect to the terms of the contract (as to which the learned trial judge said: 'What words could be stronger?'), and in regard to the alleged misrepresentations concerning the borings. The specifications and the proposal forms not only provided, as in the cases cited, that bidders must determine for themselves the conditions of the subsoil and that the correctness of the borings shown on the plans was not guaranteed by the City, but bidders were notified that the borings were made for the information of the Bureau in order to enable it to comply with the provisions of the Act of June 25, 1919, P. L. 581, article XX, section 2, which requires the department having charge of an improvement to estimate its cost, so that no bid in excess of the estimate should be accepted and that the liability of the City in the contract should be limited by the appropriations. It was further stated that *'In no event is this information to be considered as a part of the contract.' Since the plans were, by reference, a part of the contract, this*

*statement was equivalent to notice that the information furnished by the borings was not to be considered as a part of the plans.* In effect, therefore, the borings were as much obliterated from the plans as if physically erased, and their appearance thereon was relegated to the status of private memoranda for the City's own purpose." (Emphasis supplied).

As demonstrated by the quoted language, the court in the *O'Neill* case explicitly negated the argument that the borings were a part of the plans, where, as here, the plans were, by reference, included as a basis for, and part of the contract. The provision that "The type of soil and depth at which rock may be reasonably encountered is assumed to be such as shown in the table of test borings shown on Drawing. . . ." is not sufficient to counteract the strongly worded express prohibition that ". . . in no event is this information [test borings] to be considered as a part of the contract. . . ."

Since it may be assumed that plaintiff, being engaged in the contracting business, should have knowledge of the effect of a standard contract provision (almost duplicating that in the *O'Neill* case), it is unreasonable to permit plaintiff to rely on a provision that generally guarantees the correctness of the test borings, when the borings, themselves, have in the words of the *O'Neill* decision been "obliterated from the plans", and thus from the contract. This is particularly true where the same provision states that: "The contractor shall accept the site as he finds it. All excavation is unclassified."

The decisions relied on by plaintiff to sustain his argument are all distinguishable on one basic fact. In none of them was there an express prohibition against the inclusion of governmental testings in the contract.

Each of the defendants in these cases relied only on general provisions disclaiming liability for the validity of the test borings. See *Pennsylvania Turnpike Commission v. Smith et al.*, 350 Pa. 355, 39 A. 2d 139; *Funk et al. v. School District of Abington Township*, 321 Pa. 435, 184 A. 659; *United States v. Atlantic Dredging Company, W. B. Brooks Agent*, 253 U. S. 1; *Christie v. United States*, 237 U. S. 234; *Hollerbach v. United States*, 233 U. S. 165.

Moreover, in *Pennsylvania Turnpike Commission v. Smith*, supra, which the plaintiff maintains is the controlling case, not only was there no express provision excluding the test borings from the contract, but, in addition, the Turnpike Commission had knowledge of the invalidity of the borings which it withheld from the contractor and did not allow sufficient time between the solicitation of and the closing of the bids to enable the plaintiff to perform the necessary tests. In the present case, there is no allegation either that defendant knew of the inaccuracy of the test borings, or that the plaintiff was given insufficient time to establish the condition of the soil involved in the contract.

Plaintiff also claims that recovery should be allowed for the additional expenditures caused by the striking of rock rather than mica on a quasi-contractual theory. However, the purported reliance on the oral inducements of unauthorized municipal officers, upon whom the plaintiff was not entitled to rely either by the terms of the contract or the settled law in this jurisdiction, does not constitute a situation where the application of such a theory would be warranted. Once plaintiff ascertained that the soil was not as anticipated, and, having assumed such a risk, realized that the contract would prove unprofitable, the proper course for plaintiff to pursue was either to attempt a readjustment of the contract under the applicable

provisions, or to halt work and bear the consequences of his mistaken assumption.

Standard Contract Requirements, Clause 33, which makes reference to changes provides: ". . . No changes shall be made except upon written orders from the Engineer authorizing the change and fixing the method of compensation or deduction therefor." Clause 34 provides: ". . . For work which neither the prices bid [n]or the prices for contingent work are applicable, payment or deduction will be made either at a price or prices to be agreed upon in writing between the Contractor and the Engineer and approved by the Operating Commissioner, or the Engineer may order the work done under Force Account. . . . The Contractor will not be entitled to payment for any work as extra or additional, unless it be ordered in writing as such by the Engineer."

Plaintiff does not deny that the additional work performed by him was not in strict accord with the terms of the contract which required written authorization by the city engineer, but argues alternatively that either defendant waived the provisions requiring written approval or, that the municipality should not retain the benefits of the contract without some recompense to the contractor.

In *Morgan v. Johnstown,* 306 Pa. 456, 160 A. 696, the plaintiff, relying on oral declarations of city officials, performed additional work without obtaining written orders from the city engineer as required by the contract. The Court stated at p. 463: ". . . Whatever the rule may be as to the waiver of such a requirement in contracts with individuals, as to municipal contracts we have held in a long line of cases, [citing them] that the provisions of such contracts must be strictly pursued. As this contract provided that the only foundation for claims against the municipality

for extra work was the written certificate of the engineer, no other kind of claim can be sanctioned. It is argued that the city impliedly waived the provisions of the contract by not insisting upon strict compliance with its terms, in that the members of city council ordered changes in the execution of the work, not by written order, but verbally, which were made by the contractor and paid for by the city without the certificate of the engineer." And further on p. 464: ". . . That individual councilmen or other city authorities knew of the altered method of doing the work and approved it cannot be set up by the contractor to warrant his claim for extra work, where the written contract provides upon what his claim must be based."

Since in the *Morgan* case the Court required strict compliance with the terms of the contract requiring written authorization by a specified city official and held there could be no waiver of this provision, where not only oral directions from responsible city officials were issued to perform the additional work, but also where payment was made for the work performed, it is difficult to see upon what grounds plaintiff bases his contention that the city in the present case waived the contractual provisions requiring written authorization, especially where only the directions of subordinate city officials are alleged. When, as here, written orders of the city engineer for extra work are required by the terms of a municipal contract, the contractor cannot recover for the extra work without compliance with the contractual provisions, and authorization by subordinates of the designated official will not constitute a waiver of the requirement of a specific written authorization. *Morgan v. Johnstown,* supra, *Burke v. Allegheny County,* 336 Pa. 411, 9 A. 2d 396.

Plaintiff relies on the principle enunciated in *Luzerne Township v. Fayette County,* 330 Pa. 247, 199

A. 327, that the voluntary acceptance and retention by a municipality of the benefits of a contract which it had the power to make but which was defective in the method of its execution constitutes a basis for recovery by the party conferring such benefits upon quantum meruit, quantum valebat, or for money had and received. The time-tested rejoinder to the above contention is contained in the same case where on p. 253 it is stated: "; . . the doctrine does not extend to benefits which by their very nature cannot be surrendered and the retention of which is, therefore, not voluntary, as, for example, paved highways or improvements upon buildings . . ." In *Charleroi Lumber Company v. Bentleyville Borough School District*, 334 Pa. 424, 433, 6 A. 2d 88, the construction of a building for a municipality is encompassed by the cited rule.

However, in order that plaintiff may not be barred, as he argues, by mere legal technicalities, an examination of the situation in this, and similar municipal contracting cases, is justified. Where a contractor has attempted to recover for either additional work or work necessitated by a change in the plans and specifications, all of the cases in this jurisdiction have denied recovery where the contract prescribed a procedure for the prior approval of such additional work, and such prescribed procedure had not been followed. The reasons for the requirement of strict adherence to the contractual provisions are obvious. Municipal construction contracts, whose terms are in a large part governed by statute, are designed to provide, from the initial bidding to final completion, for as many reasonably foreseeable contingencies as practicable, to forestall any possible collusion between city officials and contractors and to protect public funds against wanton dissipation. A case could conceivably arise where the contractual provisions did not adequately

provide for a particular contingency, and the application of the rule relied upon by plaintiff, to wit, that the voluntary retention of benefits by the city should justify compensation, would be warranted. Such, however, is not the case here; and the enumerated reasons for the requirement of strict compliance with the term of a written municipal contract are not outweighed by plaintiff's reliance on the direction of unauthorized city officials.

We find that plaintiff has shown no sufficient ground, either in contract or on a quasi-contractual basis, to allow the recovery for which he prays beyond the agreed contract price of $256,294. It is unnecessary, therefore, for us to consider the city's contention that in any event plaintiff's recovery would be limited to the expressly stated contractual limit of $256,910 which "the total amount to be paid . . . shall in no event exceed." (See, in this connection: *McManus v. Philadelphia*, 201 Pa. 632, 51 A. 322, and *Canuso et al. v. Philadelphia*, 326 Pa. 302, 192 A. 133.)

Since defendant readily admits that a balance of $15,402.44 for work performed in accordance with the contract and due under its terms remains unpaid, the plaintiff is entitled to such balance.

The order of the court below sustaining defendant's preliminary objections except as to the balance admittedly due, is affirmed and judgment is here entered for the plaintiff and against the defendant in the amount of $15,402.44, with interest from the time the same became due and payable.