## ENVIRONMENTAL UTILITIES CORP.

v.

## LANCASTER AREA SEWER AUTHORITY.

Civ. A. No. 75–3473.

United States District Court, E. D. Pennsylvania.

July 7, 1978.

John P. O'Dea, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for plaintiff.

Richard P. Brown, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is an action for alleged breach of construction contracts, in which plaintiff cites six grounds for recovery of damages. Three deal with claims for balances due on the three separate construction contracts. The other three deal with claims for "additional and extra work" and/or "change order work" resulting from work performed on each of the three contracts. Defendant moves for partial summary judgment as to the second set of claims mentioned above.

Defendant is a municipal authority which developed, in the late 1960's, a plan for an extensive and interconnected sewer system throughout the various townships and boroughs in the Lancaster area. Huth Engineers, Inc. (Huth) was retained to prepare the plans and specifications for the project and to supervise its construction. Huth divided the system into several distinct parts for each of which a separate contract was awarded and executed. Plaintiff was first awarded Contract 10, in the area of the Borough of Mountville. Four months after plaintiff commenced working on this project, Samuel Berlanti, a Vice President of plaintiff, took charge of it. He also prepared bids on Contracts 20 and 21, in the area of West Hempfield Township, while plaintiff was performing the work on Contract 10.

The terms of the three contracts are identical in most material respects, especially in the areas designated as Information for Bidders, Technical Provisions (Standard) and Technical Provisions (Detailed). The contracts also consisted of two major parts: the plans and the specifications. The specifications provided for payment on a unit price basis, in which the total contract price would depend on the amount of work performed by the contractor. Thus, the contractor was to be paid by the linear foot for

the installation of pipe, by the cubic yard for the installation of backfill and by the square yard for the replacement of paving. Furthermore, in the last two categories there were constraints known as "pay widths" which limited the amount of backfill replaced and the amount of paving replaced to certain pay widths. Thus, when eight inch pipe was laid, the backfill pay width was limited to two feet, the paving restoration of non-state highways was limited to thirty-eight inches and the restoration of pavement of state highways was limited to forty-eight inches.

The specifications in the contracts also provided that if extra work became necessary a prescribed procedure was to be followed. Thus, for example, Section 17 of the Supplemental General Conditions of the Specifications of Contract 10 reads in pertinent part as follows:

"Without invalidating the contract, the Owner may order extra work or make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly. All the work of the kind bid upon shall be paid for at the price stipulated in the proposal, and no claims for any extra work or materials shall be allowed unless the work is ordered in writing by the Owner or its Engineer, acting officially for the Owner, and the price is stated in such order."

Section 22 of the General Conditions of the Specifications of Contract 10 reads as follows:

"22. Claims for Extra Cost

No claim for extra work or cost shall be allowed unless the same was done in pursuance of a written order of the Architect/Engineer approved by the Owner, as aforesaid, and the claim presented with the first estimate after the change or extra work is done. When work is performed under the terms of sub-paragraph 17(c) of the General Conditions, the Contractor shall furnish satisfactory bills, pay-rolls and vouchers covering all items of cost and when requested by the Owner, give the Owner access to accounts relating thereto."

There are also a series of provisions in the Standard General Conditions of Contracts 20 and 21 which are identical to those in Contract 10 and which read as follows:

"ARTICLE 10—CHANGES IN THE WORK

10.1 Without invalidating the Agreement, the OWNER may, at any time or from time to time, order additions, deletions or revisions in the Work; these will be authorized by Change Orders. Upon receipt of a Change Order, the CONTRACTOR will proceed with the Work involved. All such Work shall be executed under the applicable conditions of the Contract Documents. If any Change Order causes an increase or decrease in the Contract Price or an extension or shortening of the Contract Time, an equitable adjustment will be made as provided in Article 12."

"ARTICLE 1—DEFINITIONS

Wherever used in these General Conditions or in the other Contract Documents, the following terms shall have the meanings indicated which shall be applicable to both the singular and plural thereof:

\* \* \* \* \* \*

*Change Order*—A written order to the CONTRACTOR signed by the OWNER authorizing an addition, deletion or revision in the Work, or an adjustment in the Contract Price or the Contract Time issued after execution of the Agreement.

\* \* \* \* \* \*

"ARTICLE 11—CHANGE OF CONTRACT PRICE

11.1 The Contract Price constitutes the total compensation payable to the CONTRACTOR for performing the Work. All duties, responsibilities and obligations assigned to or undertaken by the CONTRACTOR shall be at his expense without change in the Contract Price.

11.2 The Contract Price may only be changed by a Change Order. Any claim for an increase in the Contract Price, shall be in writing delivered to the OWNER and the ENGINEER within 15 days of the occurrence of the event giving rise

to the claim. All claims for adjustments in the Contract Price shall be determined by the ENGINEER if the OWNER and CONTRACTOR cannot otherwise agree on the amount involved. Any change in the Contract Price resulting from any such claim shall be incorporated in a Change Order.

\* \* \* \* \* \* "

In addition to this language regarding alteration of work and payment therefor, there is language regarding the conditions of the work sites. The language of all three contracts is contained in the "Information for Bidders" section and is identical to that in Contract 20:

"11. *CONDITIONS OF WORK*

Each bidder must inform himself fully of the conditions relating to the construction of the project and the employment of labor thereon. Failure to do so will not relieve a successful bidder of his obligation to furnish all material and labor necessary to carry out the provisions of his contract. Insofar as possible the Contractor, in carrying out his work, must employ such methods or means as will not cause any interruption of or interference with the work of any other contractor.

"12. *ADDENDA AND INTERPRETATIONS*

No interpretation of the meaning of the plans, specifications or other pre-bid documents will be made to any bidder orally. Every request for such interpretation should be in writing addressed to Hugh Engineers, Inc., 37 North Duke Street, Lancaster, Pennsylvania 17602, and to be given consideration must be received at least five days prior to the date fixed for the opening of bids. Any and all such interpretations and any supplemental instructions will be in the form of written addenda to the specifications which, if issued, will be mailed by certified mail with return receipt requested to all prospective bidders (at the respective addresses furnished for such purposes), not later than three days prior to the date fixed for the opening of the bids. Failure of any bidder to receive any such

addendum or interpretation shall not relieve such bidder from any obligation under his bid as submitted. Any addenda so issued shall become part of the contract documents.

\* \* \* \* \* \*

"16. *LAWS AND REGULATIONS*

The bidder's attention is directed to the fact that all applicable State laws, municipal ordinances, and the rules and regulations of all authorities having jurisdiction over construction of the project shall apply to the contract throughout, and they will be deemed to be included in the contract the same as though herein written out in full.

\* \* \* \* \* \*

"18. *OBLIGATION OF BIDDER*

At the time of the opening of bids each bidder will be presumed to have inspected the site and to have read and to be thoroughly familiar with the plans and contract documents (including all addenda). The failure or omission of any bidder to examine any form, instrument or document shall in no way relieve any bidder from an obligation in respect of his bid.

"19. *SITE CONDITIONS*

Where information as to soil conditions, test borings, test piles and existing underground and overhead structure locations is shown on the Engineer's plans, specifications or drawings, or in preliminary reports prepared by the Engineer, such information is for the Owner. The correctness of such information is not guaranteed by the Owner or the Engineer, and in no event shall be considered as a part of the contract, an inducement to bidding or as a factor for computation of bids. If such information is used by a bidder in preparing his proposal, he must assume all risks that conditions encountered in performing work may be different from the approximation shown. If any bidder so desires, the Owner will afford him an opportunity, at his own expense, to make borings or soundings, to drive test piles or to dig test pits properly refilled to the satisfaction of the Owner.

The Contractor shall satisfy himself, by careful examination, as to the nature and location of the work, the character of equipment needed preliminary to and during prosecution of the work, the general and local conditions, and all other matters which can in any way affect work under this contract.

"20. *APPROXIMATE ESTIMATE OF PROPOSAL QUANTITIES*

The bidder's attention is directed to the fact that in contracts based on unit prices the estimate of quantities of work to be done and materials to be furnished under these specifications, as shown on the proposal form and in the contract, is approximate and is given only as a basis of calculation upon which to determine the lowest bidder. The Owner does not assume any responsibility that estimated quantities shall be maintained in the construction of the project, nor shall the Contractor plead misunderstanding or deception because of such estimate of quantities, or the character of the work or location, or other conditions pertaining thereto. The Owner reserves the right to increase or diminish any or all of the above mentioned quantities of work or to omit any of them, as it may deem necessary, and such increase or decrease of the quantities given for any of the items shall not be considered as sufficient grounds for granting an increase in the unit prices bid."

Excluding the amounts claimed, the pertinent paragraphs of plaintiff's complaint allege the following:

"11. The additional and extra work, and the amounts claimed for additional and extra work, are as follows:

 (a) Item 61.2 (2RC backfill)

 (b) Item 69.25 (shoulders)

 (c) Item 69.30 (shoulders)

 (d) Repaving of roads and streets

 (e) Retesting and repairing sewer lines

 (f) Construction and installation of 427 manhole inverts and channels

 (g) Additional overhead and supervision

 \* \* \* \* \* \*

"19. As a result of additional and extra work and/or change orders issued by the engineer with the owner's approval, and plaintiff's performance of said work, plaintiff submitted claims for work on Contract 20 to the engineer in November, 1974. The additional and extra work and change order work and the amounts claimed for such work are as follows:

 (a) Item 61.2 (2RC backfill)

 (b) Item 66.10 (temporary paving)

 (c) Repaving.

 \* \* \* \* \* \*

"26. As a result of extra work and/or change orders issued by the engineer with the owner's approval, and plaintiff's performance of said additional and extra work and change order work, and the amounts claimed for such word (sic) are as follows:

 (a) Item 61.2 (2RC backfill)

 (b) Item 66.10 (temporary paving)

 (c) Repaving

 (d) Excavation, installation and backfill of sewers at Elizabeth Street and County Lane occasioned by underground utilities and interference by the owner and its agents.

Defendant makes five contentions: that plaintiff's claims for extra work are barred because plaintiff failed to obtain extra work orders for said work; that plaintiff's claims for extra work are barred because plaintiff failed to submit them within the time specified in the contract; that plaintiff was not entitled to rely on the information concerning the subsurface conditions because that information was expressly excluded from the contract; that plaintiff was not entitled to rely on the information concerning the subsurface conditions because the contract expressly precludes such reliance; and that plaintiff's claim for extra work regarding manhole channels or inverts is barred because the specifications of Contract 10 clearly include the channels or inverts as part of the manhole.

Berlanti, speaking for the plaintiff, admits that plaintiff never received a Change

Order for any of the work for which recovery is sought, except for the construction of the manhole channels or inverts mentioned in ¶ 11(f). Furthermore, plaintiff did not submit written claims for extra work with any of its monthly estimates, or within 15 days of the alleged occurrence giving rise to the claim; in fact, plaintiff admits that the first formal submission of any claims was in a letter presented November 4, 1974; thus, plaintiff waited over two years before filing claims for work under Contract 10 and almost eighteen months before filing claims for work under Contracts 20 and 21.

In *Montgomery v. Philadelphia,* 391 Pa. 607, 615, 139 A.2d 347, 351 (1968) the Court held that:

> " * * * When, as here, written orders of the city engineer for extra work are required by the terms of a municipal contract, the contractor cannot recover for the extra work without compliance with the contractual provisions, and the authorization by subordinates of the designa[tion] official will not constitute a waver of the requirement of a specific written authorization. * * * "

In accord are *Morgan v. Johnstown,* 306 Pa. 456, 160 A. 696 (1931) and *Burke v. Allegheny County,* 336 Pa. 411, 9 A.2d 396 (1939). See also, *Security Painting Co. v. Commonwealth,* 24 Pa.Cmwlth. 507, 357 A.2d 251 (1976) and *Commonwealth, Department of Transportation v. Buckley & Co., Inc.,* 23 Pa.Cmwlth. 18, 350 A.2d 438 (1976). Therefore, in *Cruz Construction Co. v. Lancaster Area Sewer Authority,* 439 F.Supp. 1202 (E.D.Pa.1977) this Court granted defendant partial summary judgment because of the plaintiff's failure to obtain an extra work order required by the very same contractual language present in the case at bar. We see no reason to hold differently here.

Plaintiff asserts that its claims for backfill, shoulder restoration and repaving are not extra work arguing that plaintiff was compelled to excavate at a width greater than the pay width because governmental regulations, incorporated into the contract by its terms, require sheeting and shoring in certain types of soil, and the use of a trench box is acceptable as an alternative to sheeting and shoring; that to use such a trench box, plaintiff was required to excavate a trench six feet wide instead of two; therefore plaintiff should recover for backfill, shoulder restoration and repaving necessitated by this additional width. The fallacy in this argument is that plaintiff confuses pay width and trench width, two distinct concepts. Pay width is a constraint in price; if plaintiff's actual trench width is likely to exceed the allowable pay width, then plaintiff was required to stop and request either an extra work order for the additional work or to seek a change in the unit price for square yards of pavement and cubic yards of backfill to account for the extra work, pursuant to the change of contract price provisions of the contract. Plaintiff failed to do either and is now precluded from recovery.

Also, plaintiff cannot recover for the repair and retesting of sewer lines, since by its own admission, after the air test had been performed the infiltration test was extra, as was the command to repair all leaks in the system. Thus, while the contract compelled the contractor to follow the engineer's orders and directions relevant to the execution of the work, when an additional task such as the one mentioned in ¶ 11(e) was required, plaintiff was bound to seek an extra work order, and its failure to do so precludes recovery. *Manella v. Pittsburgh,* 334 Pa. 396, 6 A.2d 70 (1939) is of no help to plaintiff because in that case, recovery was sought, not for additional work but for repair work, necessitated because of the improper instructions by the engineers, which was needed to accomplish what the original plans and specifications called for. In this case, the work performed for which recovery is sought was additional work, and the failure to follow the contractual procedures precludes recovery. As the Court in the *Montgomery* case, cited earlier, indicated, the authorization of the work by Huth is not a waiver of the written extra work order requirement.

Plaintiff is also precluded from recovery under ¶ 26(d) for work occasioned by under-

ground utilities because of the contractual provisions regarding the condition of work sites. See *Cruz Construction Co. v. Lancaster Area Sewer Authority, supra.*

 Plaintiff also contends that it is entitled to *quantum meruit* recovery for the installation of channels or inverts in Contract 10, because such installation was required in Contracts 20 and 21 but was not required in Contract 10. Plaintiff then underscores the point by contrasting the two following sections from the Technical Provisions (Detailed), the first of which is contained in Contract 10 and the second of which is contained in Contracts 20 and 21:

*Bid Item 41.10 and 41.15*

"Furnish and install standard Concrete Man-Hole for 8-inch to 24-inch sewers, complete in place, including all earth excavation, backfill frame and cover."

*Bid Item 41.10 and 41.15*

"Furnish and install standard precast Concrete Man-Hole for 8-inch to 24-inch sewers, complete in place, including all earth excavation, backfill, frame, cover and channel."

However, while the bid item in Contract 10 did not require, in its own terms, the installation of channels, the item did require that manholes be installed, and the Contract also contained the following definition of "manhole" in the Technical Provision:

"Unless otherwise noted, manholes shall be constructed of precast concrete with cast iron frames and covers. At the location shown on the drawings or as directed by the Engineer and in accordance with the construction details. The invert channels shall be smooth and semi-circular in shape conforming to the inside of the adjacent sewer section.

"Changes in direction of flow shall be with a smooth curve of as large a radius as the size of the manhole will permit. Changes in size and grade of the channels shall be made gradually and evenly. The invert channels may be formed directly in the concrete of the manhole base, may be built up with brick and cement grout, may be half tile laid in concrete, or may be constructed by laying full section sewer pipe through the manhole and breaking out the top half after the surrounding concrete has hardened. The floor of the manhole outside the channels not less than one inch per foot and not more than two inches per foot."

This language clearly establishes that the term "manhole", by definition, included manhole channels. Thus, plaintiff cannot recover for these items as being extra items not compensated by the contract price.

For all the reasons set forth herein, we shall grant defendant's motion for partial summary judgment.