Commonwealth of Pennsylvania, Laurelton Center, Department of Public Welfare, Petitioner *v.* L & L Boiler Maintenance, Inc., Respondent.

Argued June 8, 1979, before Judges BLATT, DI-SALLE and CRAIG, sitting as a panel of three.

*Robert E. Kelly,* Deputy Attorney General, for petitioner.

*John C. Youngman, Jr.,* with him *Candor, Youngman, Gibson & Gault; Richard H. Roesgen;* and *Hager and Roesgen,* for respondent.

OPINION BY JUDGE CRAIG, October 26, 1979:

Here the Pennsylvania Department of Public Welfare's Laurelton Center (Laurelton) appeals from an adjudication and order of the Board of Arbitration and Claims (board) which awarded to respondent contractor, L & L Boiler Maintenance, Inc., the full contract payment, plus interest, as provided under an agreement which obligated the contractor to install a steam line at Laurelton Center.

The excavation for the new steam line necessarily exposed an existing water line between two cottages at the Center. In frigid weather, that water line froze on January 15, 1975, but thawed without mishap. During the following weekend of January 18-19, a valve in the water line froze, and the result then was heavy flooding which caused damage to one of the cottages and its contents.

The contractor refused to repair or pay for that damage, and Laurelton therefore withheld payment to the contractor under the contract.

After hearing, the board issued an adjudication including a finding that Laurelton did not sustain the "burden of proof in attempting to show that the damage to cottage No. 7 was a result of the activity or inactivity of the Plaintiff."

Because the evidence has not revealed the nature or identity of the cause of the water pipe freezing and the consequent damage, each party argues that the other bears the burden of proof on that point.

Laurelton relies upon Paragraph 5 of Section A of the contract, which states:

> The contractor shall be responsible for any damages to existing utilities, buildings and grounds. Any utility damage by the contractor shall be repaired immediately by the contractor.

Both parties agree that this contract provision does not impose upon the contractor strict liability or an insurer's liability, but they disagree concerning its effect, if any, on burden of proof.

Therefore the issues are: (1) Who has the burden of proof as to responsibility under the quoted contract provision? (2) Does substantial evidence exist to support board findings which tend to hold the contractor not responsible for the flooding?

Laurelton stated its cause of action here as a counterclaim, and the board treated it as such. In support of the counterclaim, Laurelton submitted testimony which could have warranted an inference that L & L was negligent in improperly insulating the water line against possible freezing.

On behalf of L & L, the record shows that at the time in question, steam had been run into the new line to keep the nearby water line from freezing, but the steam had been turned off; there is no evidence as to who caused or permitted the steam to be turned off, and the evidence is uncertain as to when it was turned off.

Ordinarily, the party who pleads the existence of certain facts bears the burden of establishing those facts. *Hervitz v. New York Life Insurance Co.*, 160 Pa. Superior Ct. 496, 52 A.2d 368 (1947). As such, that party bears the risk that he will not persuade the trier of fact or that the trier of fact will not be persuaded to infer any facts from the facts proven to draw a conclusion of liability. 9 J. Wigmore, Evidence 270-274 (3rd ed. 1940).

A defendant bears the burden of proving his counterclaim. 4 Stan. Pa. Prac. 425-426. Therefore, Laurelton had to show that the contractor was responsible for the flooding of the cottage. There is no dispute that otherwise the contractor completed the work as described in the contract.

However, Laurelton argues that the contract provision quoted above has the effect of placing liability for any damage to existing structures or utilities on the contractor, unless the contractor shows that the damage was not its fault.

We do not agree that a fair construction of the language within the four corners of the contract, including Paragraph 5 of Section A, quoted above, has such an onerous effect upon the contractor.[1] The second sentence in the quoted paragraph, referring to "utility damage by the contractor," suggests that, for the responsibility declared in the first sentence to apply, there must be at least a causal relationship between the contractor's actions or omissions and the damage.

More helpfully, Paragraph 3 of Section C of the contract provides that:

> Contractor shall assume full responsibility for damage or casualties *as the result of failure of his equipment and/or employees.* (Emphasis added.)

This latter provision more clearly indicates that any damage caused must be shown to have been caused by negligent conduct attributable to the contractor.

---

[1] We also do not agree that the construction of the language the Commonwealth asserts is in accordance with the general rule of law in such contracts. *O'Neill Construction Co. v. City of Philadelphia*, 335 Pa. 359, 6 A.2d 525 (1939), cited by Laurelton, dealt with unforeseen contingencies encountered by the contractor during the course of performance by which it incurred substantial additional expense, for which it sought recovery. Therefore, that case is not on point.

Thus, we find that the board was correct in placing on Laurelton the burden of proof as to its counterclaim.

Our review of the record accordingly convinces us that the evidence as a whole was inconclusive and equivocal as to the responsibility for the freezing of the water line, not even causation having been shown. Hence, we do not disturb the board in its refusal to infer liability of the contractor from the evidence. The weight to be given evidence is for the board. When it makes findings which are supported by substantial evidence, absent error of law, we are to affirm. *See Allan N. Lashner, Inc. v. Department of Highways,* 17 Pa. Commonwealth Ct. 217, 331 A.2d 250 (1975).

We affirm the Board.

ORDER

AND Now, this 26th day of October, 1979, the order of the Board of Arbitration of Claims, dated May 24, 1978, at Docket No. 432, is hereby affirmed.