Commonwealth of Pennsylvania, Department of General Services, Petitioner v. G. Weinberger Co., Inc., et al., Respondents.

Argued February 4, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Henry J. Costa, Jr.,* Assistant Counsel, with him *Thadeus A. Tanski,* Chief, General Litigation Unit, and *Anthony P. Krzywicki,* Chief Counsel, for petitioner.

*Joseph A. Murphy,* with him *Jerry J. Weinberger, Tellie, Durkin, Weinberger, Murphy and Piazza, P.C.,* for respondent, G. Weinberger Co., Inc.

*Harry W. Reed, Jr., Davis, Katz, Buzgon, Davis and Reed, Ltd.,* for respondent, Plotkin & Son.

*Jonathan M. Crist,* with him *Thomas A. Beckley, Beckley & Madden,* for respondents, Valverde and Franco.

OPINION BY JUDGE CRAIG, March 9, 1982:

The Pennsylvania Department of General Services questions a decision by the Board of Claims which awarded $35,023.68 plus interest to respondents G. Weinberger Company, Inc. (contractor) and Jack Plotkin & Son (subcontractor) under a contract for the installation of a fire safety sprinkler system at Clark Summit State Hospital.

During excavation for the installation of a water line, the subcontractor's workmen had struck an underground 12,500 volt electrical cable with a jackhammer, causing a violent explosion. Another company charged the state $35,023.68 to repair the damage.

The contractor initiated its action before the board when the department withheld that sum from its con-

tract payments. The subcontractor petitioned for, and was granted, leave to intervene because the contractor had, in turn, withheld the same amount from the subcontractor.

The department then filed a complaint against Valverde & Franco (V & F) — an architectural firm hired to provide all necessary design, review and inspection services for the improvements — as additional defendants, alleging that its failure to indicate the electrical cable on the contract drawings made it solely liable to the contractor or liable over to the department.

The relevant contract provisions are as follows:

18. *Responsibility for Damage.*

The plumbing contractor, at his own expense, shall make good to the architect and the Authority's satisfaction, any damage to his or any work incurred by the action of the elements or any other cause *due to neglect on the part of the plumbing contractor or his representatives.*

19. *Protection of Services.*

The contractor shall, at his own expense, repair, replace and maintain in service any utilities, facilities or services (underground, overground, interior or exterior) damaged, broken or otherwise rendered unoperative during the course of construction.... (Emphasis supplied.)

Also pertinent are sections from specification documents incorporated into the contract by reference, further delineating the parties' responsibilities:

Section 10.2.4

All damages or loss to any property referred to in clauses 10.2.1.2 and 10.2.1.3 caused in whole or in part by the contractor, any subcontractor or any sub-subcontractor, or anyone

directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable, shall be remedied by the contractor, *except damage or loss attributable to faulty drawings or specifications or to the acts or omissions of the Authority or professional or anyone employed by either of them and not attributable to the fault or negligence of the contractor.* (Emphasis supplied.)

Section 4.17.1 INDEMNIFICATION

The contractor shall indemnify and hold harmless the Authority and the professional and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the work, *provided that any such claim, damage, loss or expense ...* (b) *is caused in whole or in part by any negligent act or omission* of the contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. (Emphasis supplied.)

The board found that the department had "not proved that Plotkin or Weinberger were negligent during the course of the construction work performed at the Hospital, nor has it met its burden ... of proving that Plotkin or Weinberger caused the June 19, 1975 accident."

The board further held that, even if the department had established that the subcontractor was negligent, its failure to produce any witnesses or competent evidence as to the amount and extent of damages precluded the department from withholding the contract payment.

Finally, the board granted a motion by additional defendants V & F for a compulsory nonsuit against the department on the issues of liability and damages.

The department attacks the board's adjudication on several grounds, first contending that the compulsory nonsuit in favor of V & F was an abuse of discretion and against the weight of the evidence.

The department's sole witness as to its complaint against V & F was Horace Franco. He testified, and the board found, that the firm did not depict the location of underground electrical utilities because he was unable to locate the plan showing its installation despite repeated examination of the drawings located at the hospital.[1]

We agree with the board that the witness's statement is binding on the department, in the absence of any contradictory testimony; the evidence did not establish any duty by V & F to depict existing underground utilities on its plans. The department's failure to sustain its position as to the additional defendants' liability is sufficient to warrant a nonsuit, *Dornon v. Johnston*, 421 Pa. 58, 218 A.2d 808 (1966); we find no favorable testimony or inferences from which the department must benefit. *Harasty v. Borough of West Brownsville*, 50 Pa. Commonwealth Ct. 186, 412 A.2d 688 (1980).

The board, upon granting the motion at the conclusion of the hearings, correctly noted that the department had not sustained its claim of damages against V & F. Merely submitting the invoice from the company which repaired the damage is insufficient to prove the cost repair, absent verification or authentica-

---

[1] Franco also testified that when the plan which depicted the electrical line was found—some twenty minutes after the accident—he found that the line was inaccurately drawn and improperly located.

tion. *Gillen Appeal*, 236 Pa. Superior Ct. 521, 344 A.2d 706 (1975).

Citing *Highland Tank and Manufacturing Co. v. Duerr*, 423 Pa. 487, 225 A.2d 83 (1966), the department claims that a nonsuit was precluded because V & F offered evidence during the department's case before the board. Because this contention is neither included in the department's statement of questions nor suggested thereby, our consideration of the issue is prohibited by Pa. R.A.P. 2116.[2]

We also must dismiss the department's contention that the board erred in allowing the subcontractor to intervene. The proceeding certainly affected the likelihood of Plotkin receiving the money withheld by Weinberger since 1975, giving rise to an equitable interest best protected by the subcontractor's participation. Pa. R.C.A. No. 2327(4), Goodrich-Amram 2d §2327:7.

Our decision in *Laurelton Center v. L & L Boiler Maintenance, Inc.*, 47 Pa. Commonwealth Ct. 14, 407 A.2d 98 (1979) is controlling on the remaining issues raised by the department. We held that contract provisions similar to those in question here cannot fairly be construed so onerously against the contractor "as to impose strict liability or an insurer's liability." 47 Pa. Commonwealth Ct. at 16-17, 407 A.2d at 99-100.

The clear terms of Clause 18 of the contract and Section 4.17.1 of the specifications support the board's conclusion that contractual liability was premised on "neglect" — "any negligent act or omission" by the contractor. The board did not err in reading Clause 19 of

---

[2] That rule states in part: "This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby." The department's statement of the questions encompassed only a general assertion that the grant of nonsuit was against the weight of the evidence.

the contract, "Protection of Services" as describing the contractor's duties only if the contractor is responsible for damages under the negligence standard established in Clause 18, and in also therefore reading the two specification sections quoted above as being in pari materia.

Nor may the department avoid bearing the burden of proving the contractor's negligence by attempting to distinguish this case from *Laurelton* solely on the basis that the department was not permitted to press a counterclaim due to the board's lack of jurisdiction over actions by the Commonwealth against an individual. 42 Pa. C. S. §761, 72 P.S. §4651-1, *Fred S. James & Co., Inc. v. Board of Arbitration of Claims*, 44 Pa. Commonwealth Ct. 289, 403 A.2d 1051 (1979). The board treated the department's cause of action as a counterclaim but labeled it a "set-off"; the burden was therefore on the department to show that Weinberger or Plotkin did not exercise reasonable care.

The findings, amply supported by the record, demonstrate that Plotkin took extensive precautions in its excavation of the roadbed where the line was buried. The lack of warning devices on the concrete envelope surrounding the line, the absence of any indication of the line's existence on the work plans, and the subcontractor's earlier excavation of similar concrete slabs under the roadbed, persuaded the board that the department had not met its burden.

Finding no error, we affirm. *Laurelton, Allan N. Lashner, Inc. v. Department of Highways*, 17 Pa. Commonwealth Ct. 217, 331 A.2d 250 (1975).[3]

---

[3] An additional ground upon which we would affirm is the department's failure to establish by competent evidence the damages it suffered, as discussed above in the text with regard to the nonsuit against V & F.

208

## ORDER

Now, March 9, 1982, the order of the Board of Claims, dated February 3, 1981, No. 537 awarding $35,023.68 plus 6% interest per annum from November 18, 1976 to G. Weinberger Company, Inc., to be paid directly to Jack Plotkin and Son, is affirmed.